# In the United States District Court
## Southern District, Eastern Division of Ohio

| | | |
|---|---|---|
| IDS Publishing Corporation, | ) | |
| Plaintiff | ) | **Case No.** _____ |
| | | **Judge:** _____ |
| vs. | ) | |
| | ) | **Magistrate:** _____ |
| Reiss Profile Europe, B.V. | ) | |

_____

### COMPLAINT
_____

COMES NOW, IDS Publishing Corporation ("Plaintiff" or "IDS"), by its undersigned Counsel, and for itself and itself alone files its Original Complaint ("Complaint") against Defendant Reiss Profile Europe, B.V. ("RPE" or "Defendant").  IDS alleges as follows:

**PARTIES**

1.  IDS Publishing Corporation is a corporation organized and existing under the laws of the State of Illinois and licensed as a foreign for-profit corporation in Ohio (License Number 3908773), having a principal place of business at 868 Cherryfield Avenue, Columbus, Ohio 43235.

2.  Upon information and belief, Defendant Reiss Profile Europe B.V. is a corporation organized and existing under the laws of The Netherlands, having a principal place of business at Magnoliahof 33, Hertogenbosch, Netherlands 5213.  RPE has an agent in the United States for service of process: Buhler, Duggal & Henry, 450 Seventh Avenue, 33rd Floor, New York, NY 10123 Attention: Raoul Duggal, Esq.

**JURISDICTION**

3.  This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§1331 and 1337(a) because this action arises under the trademark and copyright laws of the United States pursuant to 28 U.S.C. §1331 because the common law claims are joined with substantial and related claims under the trademark and copyright laws of the United States and pursuant to 28 U.S.C. §1367(a) because those claims are so related to the trademark and copyright infringement claims that they form the same case or controversy and 28 U.S.C. §1332(a)(2) because this action is between a citizen of the United States and a citizen of a foreign state and the matter in controversy exceeds $75,000.00.

4.  The Court has personal jurisdiction over the Defendant because the Defendant has, since October 6, 2006, established minimum contacts with this forum by transmitting the executed License to Plaintiff in Columbus, Ohio and thereafter continuously transacting business with Plaintiff for trademarked and copyrighted goods and services emanating from Columbus, Ohio, including making all royalty payments to IDS in Columbus, Ohio, such that the exercise of jurisdiction over the Defendants under the Ohio long arm statute (Ohio Rev. Code §2307.382(A)(1)) would not offend traditional notions of fair play and substantial justice, and does not violate due process.

5.  Venue is proper in the Court under 28 U.S.C. §1391(b)(2) because a substantial part of the events and/or omissions that give rise to the claims occurred within the District, inasmuch as the Defendant transacts business directly by acquiring goods and services from Plaintiff that are provided to Defendant from and/or through its operations in Columbus, Ohio.

**FACTS**

6.  Dr. Steven Reiss is an internationally-recognized expert in the field of psychological assessment, including contributing significant research in four topics of psychology: anxiety disorders, developmental disabilities, intrinsic motivation (i.e., "what makes us tick"), and religion. Dr. Reiss is also an acknowledged author is the field of motivational psychology, publishing among others, the following books, "Who Am I? The 16 Basic Desires that Motivate our Actions and Define our Personalities," New York: Tarcher/Putnam, 2000 (translated into German, Swedish, Chinese, Japanese, Dutch, German, and Spanish.); and "The Normal Personality: A New Way of Thinking about People," New York: Cambridge University Press, 2008 (translated into German and Polish.).

7.  Dr. Reiss' professional reputation and good name in the assessment community, as well as the assessment marketplace, is built upon decades of research and work in the field of psychological assessment.

8.  IDS, a global publisher of various psychological assessments and other related materials, was founded by Dr. Reiss in 1988. Dr. Reiss is the author of the Reiss Motivation Profile, a standardized instrument for measuring the root causes of human motivation and behavior, also known as the "Reiss Profile." For these reasons, Dr. Reiss' name is inextricably linked to the License.

9.  The Reiss Profile is based on a psychological test methodology developed by Dr. Reiss. It captures specifically identified dimensions of individual personality. Because the indications it offers in respect of individual motivation, values and likely behavior are quite precise, the Reiss Profile is useful for many different types of personal evaluations

including those related to business consulting, HR decision-making, educational counseling, and personal coaching (e.g., for personal development, as well as for team and individual sports).

10.     IDS holds a valid United States copyright in the Reiss Profile (United States Copyright Registration TX-5-488-769).   IDS holds valid registered trademarks: for the name "Reiss Motivation Profile", issued by the United States Patent and Trademark Office (No. 3724884); for the "Reiss Profile", issued by the United States Patent and Trademark Office (No. 4117758); for the "Reiss Profile", issued by the Office for Harmonization in the Internal Market ("OHIM", which became the European Union Intellectual Property Office as of March 26, 2016 (No. 009540691); and for the "Reiss Motivational Profile", issued by the OHIM(No. 010508273).

11.     The parties entered into a License Agreement ("License") on or about October 15, 2006. A copy of this License is attached to this Complaint as Exhibit A.   The License was drafted under the control of the principals of RPE.

12.     Information about Reiss Profile Europe, B.V., ("RPE"), including its own descriptions of its operations and confirmation of these facts under the License, is found at www.reissprofile.eu.   The founders and owners of RPE, as stated in the License, are Evelyn Boltersdorf, John J.M. Delnoy, and Thomas Staller; however, the License contemplated an option sale of ownership from Evelyn Boltersdorf to her husband, Peter Boltersdorf, which sale was subsequently consummated.   No other sales or transfers of ownership of RPE are permitted under the License unless approved by the Dutch authorities (License Fifth Clause a).   To the best of Plaintiff's knowledge, no other sales

or transfers of RPE ownership have been approved by Dutch authorities, as required under the License.

13.     The License defines the "Reiss Profile" to include "128 items or psychological questions, a 44-page user manual, 16 psychological norms, and an Internet-based mechanical administration and scoring systems" (the "Work" as defined in License First Clause a). The License also defines the term "Test" as "a unit of the Work comprising the items and results" (License Seventh Clause b).   In other words, the Reiss Profile is a test comprised of the questions/items and the scored results of the test following its administration to the test taker.

14.     Since 2006, RPE has operated under the License, purchasing copies of the Reiss Profile, procuring test scoring services from IDS and otherwise receiving all of the benefits of the License, including the use of both the IDS trademark and copyrights and the use of Dr. Reiss' name in the context of the licensed products and services.

15.     The License grants RPE exclusive rights to exploit the Reiss Profile in Germany, the Netherlands, Belgium, Luxemburg, France, and Italy ("License Territories") (License Third Clause a).   Under the terms of the License, RPE is permitted one (1) sublicensee in each of the License Territories, for a total of six (6) sublicenses; however, RPE is required to obtain prior written consent from IDS for each and every person or entity it wishes to sublicense (License Third Clause b).

16.     IDS has neither received any written request from RPE to grant any sublicenses nor consented, in writing or otherwise, to RPE's issuance of any such sublicenses.   The License defines "Written Consent" as a "signed document transmitted from IDS to RPE" (License Third Clause c).

17.     Under the License, RPE is allowed only to exploit commercially copies of the Reiss Profile it purchases from IDS (License Second Clause a).  RPE is required to purchase the Reiss Profile exclusively and directly from IDS, including all copies of the test that are subsequently sold to any sublicensee (License Seventh Clause b).  All copies of the Reiss Profile are to be used "as is" by RPE (License Section Second b)). RPE and every sublicensee is required to make a minimum annual purchase of the Reiss Profile from IDS (License Fourth Clause a).

18.     Under the License, RPE is required to pay a per test royalty to IDS based on the minimum annual purchase requirements of the License, which increase with the number of years that the License is in place (License Fourth Clause c).  Each and every person or entity that holds a sublicense is subject to this minimum annual purchase requirement (License Fourth Clause a).  A pricing schedule, with volume discounts, is included in the License, which is based on the standard pricing set by IDS, plus annual increases based on the Dutch inflation rate for professional services (License Eighth Clause d and h).

19.     Under the License, RPE is not allowed to modify the Work, whether that is the Reiss Profile or any of the other components of the Work, including the Internet administration and scoring systems without prior written consent of IDS (License Second Clause b).

20.     IDS has not received any written request from RPE to modify the Work, and IDS has not given any written prior approval to RPE to modify the Work.

21.     Under the License, RPE is not allowed to develop its own version of the Reiss Profile, nor to develop another assessment that would compete with the Reiss Profile, without obtaining the prior written consent of IDS (License Second Clause d, misnumbered as c).

Because this language is not limited to the period of the License, it extends beyond termination of the License.

22.    IDS has not received any written request from RPE to develop its own version of the Reiss Profile or any competitive product and IDS has not given any written approval to RPE to develop either a competitive product or an RPE version of the Reiss Profile.

23.    Under the License, RPE has the right to certify trained individuals within the License Territory to be "Masters" who are then able to buy and sell the Work (License Seventh Clause e). In essence, then, a "Master" is required to purchase the Reiss Profile and other components of the Work indirectly from IDS through RPE.  On RPE's website, such Masters are referred to as "trainer licenses."

24.    The License requires RPE to pay IDS a royalty for each Master that is certified by RPE, except for "grandfathered" certifications existing at the time the License was issued (License Eighth Clause f and g).

25.    In or about 2010, RPE issued a sublicense in a single country within the Licensed Territory (namely, Germany) to German Reiss Profile GmbH ("GRPGH").  IDS believes GRPGH is owned in whole or in part by one or more of the owners of RPE.  GRPGH is the only country sublicense issued by RPE.

26.    IDS has not received any written request from RPE to issue a sublicense to GRPGH  and IDS has not given any written prior approval to RPE to grant this specific sublicense.

27.    During 2014, IDS began to have additional concerns about the manner in which RPE was operating under the License.  IDS raised these concerns in a number of electronic mail exchanges with RPE and its owners and demanded that RPE provide a list of all its sublicensees and Masters so IDS could determine exactly how RPE was operating and

the amount of royalties owed by RPE. For its part, RPE denied doing anything in breach of the License and refused to provide any information about sublicensees or Masters.

28. On February 8, 2015, IDS notified RPE of a number of violations of the License, demanding that RPE cease and desist from those activities, including selling the Reiss Profile in languages that are clearly not intended for use in the License Territory (e.g., Mandarin Chinese) and creating an unauthorized "management consulting" business that appeared to be selling RPE shares to investors and/or being operated as a pyramid or Ponzi scheme. IDS explained that it acted in order to protect the reputation of the Reiss Profile, the reputation of Dr. Reiss, and the rights of other licensees in other countries. IDS also demanded that RPE submit to a professional audit of its financial records "to determine if RPE has in fact paid all the royalties to which IDS is legally entitled under the license." A copy of this letter is attached as Exhibit B. RPE did not formally respond to the IDS February 8, 2015 letter.

29. In early February 2015, RPE disclosed to IDS both that it had developed a mobile application for what it termed "compliment cards" that are sold to test takers based on results of the Reiss Profile and that it had contracted with Google and Apple to sell that app on their respective app stores. IDS complained to RPE that the app violated the License. RPE changed its position and asserted that this product is not derived from the Reiss Profile. In addition, RPE told IDS it had started working with other entities in Germany to develop an assessment(s) for use in health care, contending that it would use the Reiss Profile in this work; however, IDS subsequently learned that RPE actually intends to develop a competing assessment for use by the healthcare clinics, and also a competing assessment for use with sports teams.

30. On or about February 14, 2015, IDS sent written notices to several entities that RPE indicated it was working with, informing them that working with RPE to develop a assessment that competes with or modifies the Reiss Profile would violate IDS' intellectual property rights and the License.

31. On or about June 17, 2015, RPE in a letter from its US-based counsel, made assertions about violations of the License by IDS and stated it would voluntarily terminate the License effective December 31, 2016.

32. On or about July 7, 2015, IDS sent an invoice to RPE for €860,000, based upon the best information available, for past due royalties under the License. A copy of this invoice is attached to this Complaint as Exhibit C.

33. On February 29, 2016, IDS sent letters by Federal Express to RPE, addressed to two of its principal owners, Peter Boltersdorf and John Delnoy, reiterating specific complaints that RPE is infringing on IDS' intellectual property and violating the terms of the License. Copies of these letters are attached as Exhibits D and E. Both letters were signed for at the respective addresses on March 2, 2016. Mr. Delnoy subsequently attempted to return his letter to Federal Express.

34. On or about April 21, 2016, RPE published a letter to its customers announcing that it will partner with the University of Luxembourg to develop a new personality assessment that it intends to market as a replacement of the Reiss Profile after the IDS License terminates. A copy of this letter is attached as Exhibit F.

**COUNT I: INFRINGEMENT OF COPYRIGHT**

35. IDS incorporates by reference Paragraphs 1-34 of the Complaint as if fully set forth herein.

36.    On July 2, 2001, IDS was issued a registered United States copyright for the Reiss Profile (TX-5-488-769). A downloaded copy of this registered copyright is attached as Exhibit G. IDS holds all rights and interests in this copyright.

37.    RPE has engaged and is engaging in unauthorized conduct and activities that violate the United States Copyright Act, 17 U.S.C. §§101 et. seq., which actions constitute direct infringement of the IDS copyright.

38.    The License requires that RPE only exploit copies of the RP purchased directly from IDS, and such copies are to be used "as is" (License Second Clause a) and b) and Seventh Clause b). Thus, RPE does not have the right to sell or use copies of the Reiss Profile not purchased directly from IDS or to change or modify the Reiss Profile, in whole or in part, without the prior written permission of IDS.

39.    Upon information and belief, RPE has infringed, or is infringing on, the IDS copyright by making changes, additions, or modifications to the copyrighted Reiss Profile without IDS's express written permission, including unauthorized expansion and/or alteration of the score interpretation report, changes and/or modifications to the testing materials, including manuals, which support the Reiss Profile, and making incorrect and invalid translations of the Reiss Profile test items and/or supporting materials.

40.    IDS has not received any written requests from RPE under the License to modify the copyrighted Reiss Profile, and IDS has not granted any written approval to RPE authorizing any such changes to the Reiss Profile, the Licensed Work, or its supporting materials.

41.    Upon information and belief, RPE has infringed, and is infringing on, the IDS copyright by engaging in activities to develop an unauthorized derivative of the Work, namely a

mobile application based upon and/or related to the Reiss Profile. Furthermore, on information and belief, RPE has contracted with Google and Apple to sell this derivative mobile app through the app stores of those Internet companies, including to customers in the United States.

42.    IDS has not received any written requests from RPE under the License to engage in the development of a mobile app as a derivative work.

43.    Upon information and belief, RPE has infringed, and is infringing on, the IDS copyright by engaging in activities to develop an assessment that is intended to compete commercially with the Reiss Profile. On information and belief, RPE has infringed, or is infringing on, the IDS copyright by basing this competitive assessment on items taken directly from, and/or written parallel to, items in the current Reiss Profile.

44.    IDS has not received any written request from RPE to engage in the development of a new motivational assessment that would compete with the Reiss Profile in the marketplace, whether such new assessment is based on the Reiss Profile or not.

45.    Upon information and belief, RPE's use of unauthorized, infringing revised score interpretation reports are not scientifically valid and as such do not accurately represent an individual's performance on the Reiss Profile. Such inaccuracies have and will continue to result in dilution of the value of the copyrighted Reiss Profile in the marketplace.

46.    Upon information and belief, RPE's infringement of IDS's copyrighted test has also resulted in dilution of the value of that copyright by virtue of the product confusion RPE has created among potential users of the Reiss Profile, specifically Masters who have been trained or are familiar with the name and professional reputation enjoyed by the

Reiss Profile within the worldwide assessment community and, in particular, within the motivational assessment community.

47.     The acts of copyright infringement committed by RPE have caused damages to IDS, and IDS is entitled to recover from RPE the damages sustained as a result of its wrongful acts in an amount subject to proof at trial.  This infringement of the IDS copyright will continue to damage IDS, causing irreparable harm (including damage to its reputation and loss market share), for which there is no adequate remedy at law; therefore, this Court should enjoin RPE from any further infringement.

48.     RPE's infringement of IDS's copyright is willful and deliberate, entitling IDS to statutory damages and attorney's fees.

## COUNT II:  INFRINGEMENT OF TRADEMARK

49.     IDS incorporates by reference Paragraphs 1-48 of the Complaint as if fully set forth herein.

50.     On December 15, 2009, IDS was issued a trademark for the Reiss Motivation Profile (Reg. No. 3,724,884).  A copy of this registered trademark is attached as Exhibit H.  IDS holds all rights and interests in this trademark.  On 3/27/2012 IDS was issued a trademark for the Reiss Motivation Profile (Reg. No. 4,117,758).  A copy of this registered trademark is attached as Exhibit I

51.     Defendant RPE applied for and obtained identical trademarks for use in the European Union countries, including "Reiss Profile" (filed November 8, 2010, OHIM No. 009540691) and "Reiss Motivation Profile" (filed December 5, 2011, OHIM No. 010508273).  On March 20, 2012, RPE transferred and assigned Both trademarks to IDS.

A copy of the assignment is attached as Exhibit J.  IDS holds all rights and interests in these trademarks. A copy of this assignment is attached as Exhibit J.

52. Defendant RPE has engaged and is engaging in unauthorized conduct and activities that violate the Lanham Act, 15 U.S.C. §§1501 et. seq., which actions constitute direct infringement of the IDS trademarks.

53. Defendant RPE is infringing the IDS trademarks in the "Reiss Profile" and the "Reiss Motivational Profile" by commercially using and relying on Dr. Reiss' name and reputation and/or referencing these various trademarks outside of the License in a commercial manner intended to confuse consumers and deceive potential consumers as to the source, affiliation, or sponsorship of the test.  Among the trademark infringing actions by RPE is naming part of its business the "Institute fur das Reiss Profile in Management" and naming its mobile app the "Motivation App."

54. Defendant RPE's commercial use of these non-licensed marks in advertising and promotion, including on its website and on social media, is likely to cause confusion among users and potential users of the IDS trademarked goods and services.

55. Upon information and believe, Defendant RPE has established its own scoring server system that it uses to score the Reiss Profile taken by its customers, telling its customers that their tests are being scored by IDS, as the licensor, which services use and display the IDS trademarks as though they are part of the scoring services provided by IDS. Accordingly, by substituting its proprietary, non-Licensed scoring services for those of IDS, RPE is infringing on the IDS trademarks.

56. Upon information and believe, Defendant RPE has developed its own score interpretation reports that it provides to its customers who take the Reiss Profile, telling its customers

that their tests results are being interpreted in accordance with the IDS system, which services display and use the IDS trademarks as though they are part of the IDS score reporting system. Accordingly, by substituting its proprietary, non-Licensed score interpretation reporting services for those of IDS, RPE is infringing on the IDS trademarks.

57.   As a result of RPE's infringement of the "Reiss Profile" and "Reiss Motivational Profile" marks, IDS is entitled to preliminary and permanent injunctive relief to prevent continued infringement and further unfair competition.

58.   IDS is also entitled to the profits RPE has derived from the operation of its proprietary, non-Licensed operations of the scoring and score interpretation systems using and displaying the "Reiss Profile" and "Reiss Motivational Profile" marks, as well as compensatory damages suffered by IDS as a result of the trademark infringement, and the costs incurred by IDS to prosecute this action, and in any event, a just amount of damages, including treble damages, as a result of RPE's willful and deliberate infringement.

59.   Inasmuch as the RPE trademark infringement is deliberate or willful, malicious, and fraudulent, this case is exceptional, and therefore, IDS is entitled to an award of attorneys' fees.

**COUNT III:  DAMAGES TO BUSINESS REPUTATION**

60.   IDS incorporates by reference Paragraphs 1-59 of the Complaint as if fully set forth herein.

61.   Upon information and belief, through the use of non-IDS materials and systems with unauthorized "Masters," RPE has and is engaged in deceptive trade practices. Upon

information and belief, many of these "Masters" customers will feel betrayed when they eventually realize that RPE has used non-licensed training materials and methods and/or that their certification is not recognized by IDS, and equally important, that IDS is not directly responsible for providing the testing products and services these Masters believe they are using with their end-user customers.

62. Upon information and belief, RPE has and is engaged in misrepresentation of its products and services, through the use of a non-licensed scoring server and non-licensed score interpretation reporting, which has not been validated by IDS or anyone else in the psychological assessment community.

63. Individually and collectively, these actions by RPE have caused and are causing damage to IDS's reputation. These damages are foreseeable from the actions of RPE in misrepresenting its services and misusing the Reiss Profile. Upon information and belief, IDS alleges that it could be unjustly subject to litigation from these customers for damages arising from RPE's use of non-IDS materials and systems in training Masters, which at a minimum would give rise to litigation costs to defend itself.

64. The deceptive trade practices, misrepresentations, and other similar acts committed by RPE have caused damages to IDS, and IDS is entitled to recover from RPE the damages sustained as a result of its wrongful acts in an amount subject to proof at trial.

## COUNT IV: BREACH OF CONTRACT

65. IDS incorporates by reference Paragraphs 1-64 of the Complaint as if fully set forth herein.

66. Upon information and belief, Defendant RPE has breached the License by modifying the Work (License First Clause a and Clause Second b) and specifically violating the terms

of the License by misusing copies of the Work purchased from IDS (License Second Clause a).  RPE has breached these License terms by: (a) developing and using unauthorized and invalid translations of the Reiss Profile; (b) developing and using its own scoring software that RPE is using instead of the licensed scoring software; (c) arranging for a server system that is not the licensed Internet test administration system provided by IDS under the License, from which RPE distributes and administers the Reiss Profile but also hosts the non-licensed scoring software; and (d) developing and using its own score interpretation reports to give to individuals who take the Reiss Profile, but which score interpretation report are not scientifically validated, instead of using the licensed score reports which are part of the Work.

67.     Upon information and belief, Defendant RPE has breached the License by developing translated versions of the Reiss Profile into languages (e.g., Mandarin Chinese) that contemplate sales of the Reiss Profile outside of License Territory as defined in the License.

68.     Upon information and belief, Defendant RPE breached the License (License Second Clause d, misnumbered in the original License as Second Clause c) by developing one or more assessments based on the Reiss Profile, or that will compete directly with the Reiss Profile, which RPE is using or which it intends on using in competition with the Reiss Profile when the License terminates, including a mobile application currently being sold by Google and Apple in their respective app stores.  RPE initially disclosed such an intention to IDS in early 2015 (see ¶29).  More recently, RPE has announced it is partnering with the University of Luxembourg to develop a new assessment that will replace its use of the Reiss Profile once the License with IDS terminates (see ¶34).

69.    By taking affirmative action to develop a competing test, RPE breached the License by sharing confidential information and trade secrets about the Reiss Profile with the University of Luxembourg (License Sixth Clause a).  As made clear in the RPE letter to its customers, the work being undertaken by the University of Luxembourg is not scientific research, but rather is intended to result in the commercial replacement of the Licensed Product.  Accordingly, upon information and belief, these activities do not fall within the scope of the scientific research exception to the License (License Sixth Clause c).

70.    As of the date of this Complaint, IDS has not received any requests from RPE to approve any sublicensees under the License.  Nevertheless, RPE has granted a sublicense to a German company apparently owned by one or more of the owners of RPE, German Reiss Profile, GmbH ("GRPGH").

71.    On information and belief, RPE, through its affiliation with GRPGH, has breached the License by granting as many as four additional sublicenses for the use of the Reiss Profile.  Each additional sublicense was granted without IDS's knowledge or prior written consent.  Each such action represents a separate breach of the License under Third Clause b).

72.    Upon information and belief, RPE, through its affiliation with GRPGH, has trained and certified approximately one thousand (1,000) individuals as "Masters," who themselves purchase the Reiss Profile to administer to their individual customers, which actions were all committed without prior written approval from IDS, each of which effectively creates an unauthorized sub-sublicensee.

73. IDS has demanded that RPE identify each and every sublicense and/or sub-sublicense it has granted, whether to a person or entity representing one of the countries in the Licensed Territory, or to individual Masters. RPE has refused to disclose this information.

74. Upon information and belief, Defendant RPE has breached the License because it is not currently purchasing, nor did it purchase during previous years of the License, the required minimum number of tests, either for itself or for its sublicensees and/or sub-sublicensees (License Fourth Clause a, b, and c and Seventh Clause b).

75. Upon information and belief, Defendant RPE has breached the License because it has failed to pay IDS the required royalty for each Master that is trained and certified (License Seventh Clause g).

76. The breaches of the License committed by RPE have caused damages to IDS, including the failure to pay required royalties, and IDS is entitled to recover from RPE the damages sustained as a result thereof in an amount subject to proof at trial. Upon information and belief, the amount of unpaid royalties owed by RPE under the "Minimal Performance Standard" (License Fourth Clause) is at least €860,000, which amount IDS submitted to RPE in an invoice, dated July 7, 2015. In the period of months since IDS issued that invoice, additional royalties are owed to IDS. In addition, because RPE has failed to disclose any information about the number of Masters it has trained and certified, RPE has not paid IDS the required fee of €100 for each such certification (License Seventh Clause g).

77. Related to RPE's breaches of the License because it has modified of the Work, RPE has also breached the License (License Second Clause c) by refusing the turn over to IDS the

source code for the RPE scoring software, the materials related to the derivative works based on the Reiss Profile, and materials related to the assessment(s) that it is using or intends to use in competing with the Reiss Profile. Under the License, IDS is entitled to "use and commercially exploit" such information/materials outside the License Territory. Therefore, IDS demands specific performance of this requirement by RPE, as well as damages for lost sales revenue that should have been generated from the source code and all derivative works of the Work, in an amount subject to proof at trial.

78.   Individually, or taken as a whole, each of the breaches alleged herein represent a separate breach of the License by RPE by committing acts that have had and will continue to have "significant and adverse implications on IDS Publishing's exclusive right to market in (sic) North and South America, Asia, Africa, the Middle East, and all places not included in the License Territory" (License First Clause c). IDS is entitled to damages for this breach in an amount subject to proof at trial.

## COUNT V: FRAUD AND CONVERSION

79.   IDS incorporates by reference Paragraphs 1-78 of the Complaint as if fully set forth herein.

80.   Upon information and belief, RPE entered into the License under false pretenses in order to obtain access to the intellectual property and trade secrets of IDS.

81.   RPE's actions demonstrate its true intention has been and continues to be to better position itself to convert and otherwise misappropriate all of the IDS property.

82.   IDS justifiably relied upon RPE's representations in the License and, based upon those representations, granted RPE access to its copyright and trademarks.

83.   RPE used access to IDS's copyright and trademarks to its benefit and IDS's detriment.

84. Upon information and belief, by its misuse of the License and illegal acts outside of the terms of the License, RPE has been and continues to be engaging in fraud and unfair competition against IDS by seeking to capitalize on the intellectual property and trade secrets of IDS by: (a) infringing on the IDS copyright; (b) infringing on the IDS trademarks; and (c) developing products and services that unfairly compete with IDS; and (d) implementing business operations that are intended to unfairly use name and reputation of Dr. Reiss to unfairly compete with IDS.

85. Upon information and belief, RPE's fraudulent intention in entering into the License is further evidenced by its failure to exploit the License to its fullest extent, by never seeking written approval from IDS to grant sublicenses to any person or entity in five of the six countries in the Licensed Territory, namely, the Netherlands, Belgium, Luxemburg, France, and Italy, in order to fraudulently prevent IDS from obtaining the expected benefits of the License.

86. Upon information and belief, RPE has intentionally structured its ownership, and that of its acknowledged sublicensee, German Reiss Profile GmbH ("GRPGH"), in a manner that fraudulently prevents IDS from obtaining the expected benefits of the License.

87. Upon information and belief, RPE in affiliation with GRPGH, has intentionally engaged in fraud by engaging in a pyramid scheme or Ponzi scheme, by selling shares of the licensee and/or sublicensee to certified Masters without written prior approval of IDS.

88. Upon information and belief, by and through these various fraudulent techniques, RPE has hidden the true ownership of RPE from IDS and prevented IDS from knowing the true identity of the owners of RPE, as well as the identity of the Masters being certified under the License.

89.     Upon information and belief, these fraudulent actions individually or taken together, have made and continue to make it impossible for IDS, to exercise its rights as the licensor, to ensure that the operations of RPE conform to the terms and conditions of the License.

90.     Upon information and belief, RPE's declared intention to voluntarily terminate the License as of December 31, 2016, demonstrates that RPE is using the remaining months under the License to maximize its opportunities to establish itself as a competitor to IDS.

91.     RPE's fraudulent actions have been and are willful, deliberate and committed in bad faith outside of the terms of the License to establish RPE as an effective competitor to IDS, gaining an unfair business advantage over IDS in the process.

92.     IDS has suffered damages from these acts of fraud and conversion and is entitled to an award of actual and punitive damages as a result of RPE's unfair competition.

        WHEREFORE, IDS respectfully prays that upon final trial, this Court should enter a judgment in its favor and grant it the following relief:

        (1)     For judgment that the RPE has been and will continue to infringe IDS's US Copyright;

        (2)     For judgment that RPE has been and will continue to infringe IDS's EU and US trademarks;

        (3)     For judgment that RPE has engaged in deceptive trade practices, misrepresentations and misuse of non-Licensed products and services that have and will continue to damage IDS's professional and business reputation;

        (4)     For judgment that RPE has violated the terms and conditions of the Licensing Agreement with IDS;

(5)     For an accounting of RPE's use of the license including, without limitation, the number of tests RPE sold directly or indirectly through its sublicensees; the number of Masters RPE certified including their names, full contact information and their contractual arrangements with RPE; all training provided by RPE including full contact information and their contractual arrangements with RPE; a determination of all royalties and fees to which IDS is entitled under the License;

(6)     For preliminary and permanent injunctions enjoining further acts of copyright and trademark infringement by RPE, its owners, officers, shareholders, agents, employees, subsidiaries, attorneys, and any other person acting in concert with them, including related individuals and entities (e.g., the University of Luxembourg), customers, representatives, dealers and/or distributors;

(7)     For specific performance under the License, requiring RPE to turn over to IDS for its commercial use outside the License Territory all "improvements or adaptations" of the Licensed Work;

(8)     For statutory damages together with prejudgment interest for copyright infringement;

(9)     For an award of attorneys' fees pursuant to 15 U.S.C. §1117, or as otherwise permitted by law;

(10)     For damages in excess of $75,000 including all actual damages for breach of the Licensing Agreement, as well as all appropriate punitive/exemplary damages, lost profits, and attorneys' fees and all royalties and fees RPE owes IDS pursuant to the license;

(11)     For all costs of suit, prejudgment interest, and post-judgment interest as allowed by law; and

(12)    For such other and further relieve as this Court may deem just and proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, IDS demands a trial by jury of all issues.

Respectfully submitted,

**Blaugrund Kessler Myers & Postalakis Incorporated**

**/s/ JOHN W. HERBERT**
JOHN W. HERBERT (Oh. SCRN 0006373)
     Trial Attorney
     (e-mail):jwh@bhmlaw.com
300 W. Wilson Bridge Rd., Suite 100
Worthington, OH   43085
(Voice):        614-764-0681
(Fax):          614-764-0774

**ALAN J. THIEMANN**
ALAN J. THIEMANN (DC Bar Registration No. 311654)
     Co-counsel
     (e-mail):jwh@bhmlaw.com
LAW OFFICE OF ALAN J. THIEMANN
700 12th Street, NW, Suite 700
Washington, DC  20005
(Voice):        202-904-2467
(Fax):          202-558-5101

Counsel for plaintiff, IDS Publishing Corporation