**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| IDS PUBLISHING CORPORATION, | ) CASE NO.  2:16-CV-00535 |
| | ) |
| Plaintiff, | ) JUDGE EDMUND A. SARGUS |
| | ) MAGISTRATE JUDGE KIMBERLY A. |
| -vs- | ) JOLSON |
| | ) |
| REISS PROFILE EUROPE, B.V., | ) |
| | ) |
| Defendant. | ) |
| | ) |

---

# DEFENDANT'S MEMORANDUM OF LAW
# IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT

---

John B. Schomer (#0055640)
Leigh A. Maxa (#0076847)
Michael T. Altvater (#0084389)
Terry J. Evans (#0088399)
Krugliak, Wilkins, Griffiths
 & Dougherty Co., LPA
50 S. Main Street, Suite 501
Akron, Ohio  44308
Telephone:  (330)535-4830
Facsimile: (330)535-4809
E-mail:  jschomer@kwgd.com;
lmaxa@kwgd.com; maltvater@kwgd.com;
tevans@kwgd.com

David N. Levy (NY #4900569)
*Pro hac vice admission forthcoming*
Matalon Shweky Elman PLLC
450 Seventh Avenue, 33rd Floor
New York, New York 10123
Telephone: (212) 244-9000
E-mail: dlevy@mselaw.com

*Counsel for Defendant*

John W. Herbert (#0006373)
Blaugrund Kessler Myers & Postalakis Inc
300 W. Wilson Bridge Rd., Suite 100
Worthington, Ohio  43085
Telephone:  (614)764-0681
Facsimile:  (614)764-0774
E-mail:  jwh@bhmlaw.com

Alan J. Thiemann (DC# 311654)
Law Office of Alan J. Thiemann
700 12th Street, NW, Suite 700
Washington, DC  20005
Telephone:  (202)904-2467
Facsmilie: (202)558-5101
E-mail:  jwh@bhmlaw.com

*Counsel for Plaintiff*

# TABLE OF CONTENTS AND SUMMARY

**Page**

TABLE OF AUTHORITIES ........................................................................... iv

PRELIMINARY STATEMENT ...................................................................... 1

FACTS ........................................................................................................... 3

    A.   The Parties ................................................................................. 3

    B.   The License .................................................................................. 4

         1.   Negotiations Of The License ............................................ 4

         2.   The License Territory ....................................................... 5

         3.   The License Payments ...................................................... 6

    C.   Prior Disputes And Pending Litigation In Germany .................... 6

    D.   The Complaint's Allegations And Causes Of Action ................. 7

ARGUMENT .................................................................................................. 8

    I.   Plaintiff Cannot Establish The
        Court's Personal Jurisdiction Over Defendant .......................... 8

To establish personal jurisdiction over a non-resident defendant, plaintiff must make a prima facie showing that jurisdiction meets Ohio's long-arm statute and the Due Process Clause of the Fourteenth Amendment. *Calphalon Corp. v. Rowlette*, 228 F.3d 718 (6th Cir. 2000). Because defendant did not transact business under Ohio Revised Code § 2307.382(A)(1), and lacks the required minimum contacts with Ohio that would permit the Court's exercise of personal jurisdiction in this action, the case should be dismissed under Fed. R. Civ. P. 12(b)(2).

        A.   Ohio's Long-Arm Statute Does Not Apply ...................... 9

        B.   Jurisdiction Over Defendant
            Would Violate Federal Due Process ............................... 12

**TABLE OF CONTENTS AND SUMMARY**

**(continued)**

**Page**

II.   Forum Non Conveniens
      Compels Dismissal Of This Action ........................................................................15

      A case should be dismissed for forum non conveniens when the defendant
      shows an adequate and available alternative forum, and that the balance of
      private and public interest factors supports dismissal. *Barak v. Zeff*, 289 Fed.
      Appx. 907 (6th Cir. 2008). Here, the Netherlands is adequate and available.
      Further, the private and public interest factors support dismissal because the
      material witnesses and documents are located in the Netherlands and Germany,
      subject to European Union privacy laws, and require translations. Moreover,
      Ohio lacks a local interest in this case and Dutch law should govern.

      A.   There Is An Adequate Alternative Forum......................................................15

      B.   The Private Interests Favor Dismissal............................................................16

      C.   The Public Factors Also Favor Dismissal .....................................................18

            1.   Ohio Does Not Have A Local Interest In,
                 And Would Be Burdened By, This Action ...........................................18

            2.   Ohio Does Not Have An
                 Interest In Applying Its Own Law,
                 Because Dutch Law Should Govern ....................................................18

III.  Plaintiff Fails To State Claims For
      Copyright And Trademark Infringement ..............................................................20

      All of defendant's allegedly-infringing activities occurred outside the United
      States. Yet the Copyright Act does not apply extraterritorially, nor does the
      Lanham Act in these circumstances. *Liberty Toy Co., Inc. v. Fred Silber Co.*,
      149 F.3d 1193 (6th Cir. 1998). Therefore, plaintiff fails to state a claim for
      either copyright or trademark infringement, and should be dismissed under Fed.
      R. Civ. P. 12(b)(6).

      A.   The Copyright Act Does Not Apply
           To Defendant's Actions Abroad ....................................................................20

## TABLE OF CONTENTS AND SUMMARY

### (continued)

Page

B.   The Lanham Act Does Not
Apply To Defendant's Actions Abroad ........................................................21

IV.   Plaintiff's Fraud Claim Is Duplicative Of
Its Contract Claim, And Must Be Dismissed...............................................22

Plaintiff's allegations of fraud are entirely duplicative of its breach of contract claim.  But a cause of action for fraud must be based on a duty that exists independently of the contract, and cannot be merely duplicative of the contract claim.  Accordingly, plaintiff fails to state a claim and this cause of action should be dismissed under Fed. R. Civ. P. 12(b)(6).

V.   The "Damages To Business
Reputation" Claim Is Improperly Speculative...........................................24

Plaintiff's claim that it suffered damages to its business reputation fail to sufficiently allege actionable damages, and must be dismissed for being improperly speculative.  Accordingly, plaintiff fails to state a claim and this cause of action should be dismissed under Fed. R. Civ. P. 12(b)(6).

CONCLUSION..................................................................................................25

## **TABLE OF AUTHORITIES**

## **CASES**

**Page(s)**

*Alpha Telecom., Inc. v. ANS Connect*,
    2008 WL 2487248 (Ohio Ct. App. June 19, 2008)..........................................................11

*Barak v. Zeff*,
    289 Fed. Appx. 907 (6th Cir. 2008)........................................................ 15, 16, 17

*Barnes v. First Am. Title Ins. Co.*,
    2006 WL 2265553 (N.D. Ohio Aug. 8, 2006) .................................................. 23

*Barrett-O'Neill v. Lalo, LLC*,
    2016 WL 1110319 (S.D. Ohio Mar. 22, 2016) ................................................. 23

*Battista v. Lebanon Trotting Assn.*,
    538 F.2d 111 (6th Cir. 1976) ........................................................................ 22

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) .................................................................................11

*Calphalon Corp. v. Rowlette*,
    228 F.3d 718 (6th Cir. 2000) ............................................................ 8, 9, 13, 14

*Campinha-Bacote v. Wick*,
    2015 WL 7354014 (S.D. Ohio Nov. 20, 2015).................................................. 8, 9, 13

*Daimler AG v. Bauman*,
    134 S. Ct. 746 (2014) ........................................................................ 9

*Dice v. White Family Cos.*,
    878 N.E.2d 1105 (Ohio Ct. App. 2007)......................................................... 23

*Epic Commc'ns v. ANS Connect*,
    2008 WL 2766285 (Ohio Ct. App. July 17, 2008) ......................................... 11

*Epic Commc'ns, Inc. v. Progressive Commc'ns, Inc.*,
    2008 WL 1930419 (N.D. Ohio Apr. 30, 2008)................................................. 11

*Evolution Online Sys., Inc. v. Koninklijke Nederland N.V.*,
    41 F. Supp. 2d 447 (S.D.N.Y. 1999)............................................................ 16

*Goldstein v. Christiansen*,
    70 Ohio St.3d 232, 638 N.E.2d 541(1994) ..................................................... 9

## TABLE OF AUTHORITIES
### (continued)

## CASES

**Page(s)**

*Groeneveld Transp. Efficiency, Inc. v. Lubecore Intl., Inc.*,
   730 F.3d 494 (6th Cir. 2013) ................................................................... 21, 22

*Hanson v. Denckla*,
   357 U.S. 235 (1958) ........................................................................................ 12

*International Shoe Co. v. Washington*,
   326 U.S. 310 (1945) ........................................................................................ 12

*Jamhour v. Scottsdale Ins. Co.*,
   211 F. Supp. 2d 941 (S.D. Ohio 2002) ..................................................... 18, 19

*LaFarge N. Am., Inc. v. Forbes*,
   2008 WL 4877312 (Ohio Ct. App. Nov. 3, 2008) .......................................... 11

*Liberty Toy Co., Inc. v. Fred Silber Co.*,
   149 F.3d 1183 (6th Cir. 1998) ................................................................. 20, 21

*Matrix Essentials, Inc. v. Harmon Stores, Inc.*,
   205 F. Supp. 2d 779 (N.D. Ohio 2001)............................................................14

*Maxitrate Tratamento Termico E Controles v. Super Sys., Inc.*,
   617 Fed. Appx. 406 (6th Cir. 2015) ............................................................... 13

*Mertik Maxitrol GMBH & Co. KG v. Honeywell Tech. Sarl*,
   2011 WL 1454067 (E.D. Mich. Apr. 13, 2011)............................................... 21

*Moton v. Carroll*,
   2002 WL 206196 (Ohio Ct. App. Feb. 12, 2002) ........................................... 24

*Natl. City Bank v. Yevu*,
   898 N.E.2d 52 (Ohio Ct. App. 2008)   ...........................................................10

*Nationwide Mut. Ins. Co. v. Tryg Intl. Ins. Co., Ltd.*,
   91 F.3d 790 (6th Cir. 1996) ............................................................................12

*Piper Aircraft Co. v. Reyno*,
   454 U.S. 235 (1981)..................................................................... 15, 16, 17, 18

**TABLE OF AUTHORITIES**
(continued)

**CASES**

Page(s)

*RAE Assocs., Inc. v. Nexus Commc'n, Inc.*,
    36 N.E.3d 757 (Ohio Ct. App. 2015) ........................................................ 23, 24

*Reynolds v. Intl. Amateur Athletic Fed'n.*,
    23 F.3d 1110 (6th Cir. 1994) ........................................................ 14

*Rustal Trading US, Inc. v. Makki*,
    17 Fed. Appx. 331 (6th Cir. 2001) ........................................................ 15

*Southern Mach. Co. v. Mohasco Indus., Inc.*,
    401 F.2d 374 (6th Cir. 1968) ........................................................ 13

*Subafilms, Ltd. v. MGM–Pathe Commc'ns Co.*,
    24 F.3d 1088 (9th Cir. 1994) ........................................................ 20

*Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*,
    684 N.E.2d 1261 (Ohio Ct. App. 1996) ........................................................ 22

*U.S. Sprint Commc'ns Co. Ltd. Partnership v. Mr. K's Foods, Inc.*,
    68 Ohio St.3d 181, 624 N.E.2d 1048 (1994) ........................................................ 9

*Update Art, Inc. v. Modiin Publ'g, Ltd.*,
    843 F.2d 67 (2d Cir. 1988) ........................................................ 20

*Walden v. Fiore*,
    134 S.Ct. 1115 (2014) ........................................................ 12, 13

*Wolfe v. Continental Cas. Co.*,
    647 F.2d 705 (6th Cir. 1981) ........................................................ 22

*World–Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980) ........................................................ 12

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

## RULES AND STATUTES

Fed. R. Civ P. 9(b) ................................................................................................ 23

Ohio Revised Code § 1703.03 ............................................................................... 9

Ohio Revised Code § 2307.382 .............................................................................. 9

## TREATISES

Restatements (Second) of Conflicts of Laws, § 188 ........................................... 18

Restatements (Second) of Conflicts of Laws, § 148 ........................................... 19

## PRELIMINARY STATEMENT

This case has a tenuous, if any, connection to Ohio.  It is between two foreign corporations, regarding a license agreement that was chiefly negotiated in Germany, under which defendant could sell certain intellectual property exclusively in several European countries. The Court should therefore dismiss this case in its entirety for lack of personal jurisdiction over defendant and forum non conveniens.

Plaintiff-licensor IDS Publishing Corporation ("IDS") is a company formed under Illinois law. Although IDS has an office in Ohio, it was not registered in the state until shortly before commencing this litigation.  Indeed, it was not until 14 days before filing this action, and more than *ten years* since first incorporating, that IDS became licensed to do business in Ohio as a foreign corporation.  Defendant-licensee Reiss Profile Europe B.V. ("RPE") was formed under Dutch law, operates its business the Netherlands, and is owned by residents of Belgium, Germany and the Netherlands.  RPE conducts no business in the United States (or Ohio).

Apparently disenchanted with its existing European licensee, in 2005, IDS met twice with RPE representatives in Germany. There the parties agreed on the broad structure of a future relationship. A year later, once IDS terminated its outstanding European license agreement, IDS and RPE consummated their agreement after additional negotiations by fax and email.  At no point did RPE visit Ohio, or the United States, to negotiate the license agreement.

The license allowed RPE to sell a psychological test, developed by IDS, in Germany, the Netherlands, Belgium, Luxembourg, France, and Italy—and nowhere else. RPE thus had absolutely no rights in the United States, let alone Ohio, under the license. As contemplated, RPE never made a single sale pursuant to the license within the United States (as it could not), nor did it conduct any marketing or deliver any product anywhere in the United States, or otherwise earn any revenue from the United States.

1

The relationship between RPE and IDS began to sour after about ten years.  IDS hired Dutch counsel to issue demand letters to RPE, to which RPE responded in kind.  Then, in early 2016, RPE sought and obtained a preliminary injunction from a German court to enjoin IDS from selling the psychological test within Germany (part of RPE's exclusive license territory).  Several months later, IDS became licensed to do business in Ohio (solely to prosecute this action) and commenced this litigation.  But this forum is improper.

First, this action should be dismissed in its entirety for a lack of personal jurisdiction.  IDS claims jurisdiction exists under the state's long-arm statute, which provides jurisdiction if a defendant transacts business in Ohio.  Yet RPE did no such thing.  Merely sending an executed agreement to Ohio, dealing with a plaintiff that had an Ohio office, and tendering some payments there – which is all IDS relies upon – is, as a matter of law, insufficient.

Moreover, RPE's contacts with Ohio do not meet constitutional requirements.  Plainly, RPE did not purposefully avail itself of the benefits and protections of Ohio law, this claim does not arise from any such activities, and there is no substantial connection such that the exercise of jurisdiction would be reasonable.  RPE merely contracted with an Illinois corporation with an Ohio office, to sell certain tests exclusively in European markets.  There is indisputably no exploitation of any U.S. market under the license.

Second, the appropriate forum here is the Netherlands, so the case should be dismissed for forum non conveniens.  The Netherlands is an adequate and available forum where both parties already have counsel.  Further, both the public and private interest factors weigh heavily in favor of dismissal because most witnesses and documents are located in Europe, the documents will require costly translations and are subject to onerous European privacy laws,

Ohio has no interest in (and would be improperly burdened by) this litigation, and Dutch law governs.

Finally, should the case proceed in this Court, then certain causes of action must be dismissed. The trademark and copyright causes of action fail to state a claim because they concern only actions RPE took in the license territory – none in the U.S. – and the Lanham Act and Copyright Act cannot apply extraterritorially here. Next, the fraud claim must be dismissed because it is entirely duplicative of the breach of contract claim. And IDS fails to allege any actionable damages arising from any injury to its business reputation.

Therefore, RPE requests that this Court dismiss the action in its entirety, or, alternatively, dismiss certain causes of action that fail to state a claim.

## <u>FACTS</u>[1]

A.    **<u>The Parties</u>**

Plaintiff IDS is an Illinois corporation formed in March 2005. (Complaint ¶ 1; Evans Dec. ¶¶ 2-4; Evans Dec. Ex. A.) The Complaint alleges that IDS is "licensed as a foreign for-profit corporation in Ohio" with its principal place of business there. (Complaint ¶ 1.)

Noticeably absent from the Complaint, however, is that IDS only became licensed as a foreign corporation in Ohio on May 31, 2016 – more than ten years after it was formed, and just two weeks before IDS commenced this action – only to enable IDS to prosecute this case. (*See* Complaint ¶ 1; Evans Dec.¶¶ 2-4; Evans Dec. Ex. B & C.)

---

[1] The following recitation of facts is taken from the Complaint and documentary evidence attached thereto. Although certain facts in the Complaint are misstated, defendant accepts them for purposes of this motion. Moreover, additional facts concerning defendant's jurisdictional and forum non conveniens arguments are drawn from the declarations of Dr. Holger Müller ("Müller Dec."), Jan-Willem van Koeveringe ("Koeveringe Dec."), John Delnoy ("Delnoy Dec."), Peter Boltersdorf ("Boltersdorf Dec."), and Terry J. Evans ("Evans Dec."), and the exhibits annexed to those declarations, all filed contemporaneously herewith.

IDS was allegedly founded by Dr. Steven Reiss, the author of the "Reiss Motivation Profile," a psychological test that ostensibly measures the "root causes of human motivation and behavior[.]" (Complaint ¶¶ 6, 8-9.)

Defendant RPE is a corporation formed under Dutch law and operating in the Netherlands. (Delnoy Dec. ¶ 2; Boltersdorf Dec. ¶ 2; *see also* Complaint ¶ 2.) RPE is not licensed to conduct business in the United States. (Delnoy Dec. ¶ 3; Boltersdorf Dec. ¶ 3.)[2] RPE is owned and operated by residents of Belgium, the Netherlands and Germany. (*See* Complaint Ex. A at p. 2; Delnoy Dec. ¶ 1.) Moreover, RPE does not have in Ohio (or the United States) any employees, documents, offices, registered agents, or property. (Delnoy Dec. ¶ 3; Boltersdorf Dec. ¶ 3.)

**B.      The License**

IDS, as licensor, and RPE, as licensee, entered into a License Agreement in or about October 2006 ("License"). (*See* Complaint ¶ 11; Complaint Ex. A.)

**1.      Negotiations Of The License**

In 2002, IDS had entered into a licensing agreement with a non-party that covered certain territory in Europe, which IDS terminated on various grounds in 2006. (Complaint Ex. A at p. 7, Tenth Clause.) Prior to termination, IDS searched for a new licensing partner in Europe.

In Germany, Dr. Reiss and RPE representatives, Messrs. Delnoy and Boltersdorf, met twice in the summer of 2005. First, they met in Frankfurt, then again in Halle. At those meetings, the parties reached a general agreement, including that RPE would be an exclusive licensee in certain specified European territories and RPE would pay an "up front" license fee.

---

[2] The allegation concerning RPE's agent in the United States for service of process is incorrect. (Delnoy Dec. ¶ 2 at n. 1; Boltersdorf Dec. ¶ 2 at n. 1; Complaint ¶ 2.) Indeed, after IDS attempted service on that agent, it was informed of the error and attempted service again directly on RPE. (*See* ECF No. 8-11.)

Subsequent details were discussed by e-mail and fax, and ultimately agreed upon once IDS terminated its prior license. RPE's Dutch and German attorneys reviewed the draft agreement (but RPE did not engage United States counsel for review). A year later, the parties reached agreement. The RPE shareholders ultimately executed the License in the Netherlands and faxed it to Dr. Reiss in Ohio. (Delnoy Dec. ¶¶ 4-8; Boltersdorf Dec. ¶¶ 4-8; Müller Dec. ¶ 2; Koeveringe Dec. ¶ 2.)

Neither Messrs. Delnoy, Boltersdorf nor any other RPE representative travelled to Ohio for the License negotiations, nor has RPE conducted any activities in Ohio (or the United States) concerning the License or the Reiss Profile. RPE never made a single sale pursuant to the license within the United States (as it could not), nor did it conduct any marketing or deliver any product anywhere in the United States, or otherwise earn any revenue from the United States. (Delnoy Dec. ¶¶ 9-10; Boltersdorf Dec. ¶¶ 9-10.)

### 2.  The License Territory

The License specifically lists the countries in which RPE can market the "Reiss Profile." In particular, the "License Territory" is defined as "the nations of Germany, Netherlands, Belgium, Luxembourg, France, and Italy…but nowhere else." (Complaint Ex. A at p. 3; *see also* Complaint ¶ 15.) Moreover, "[a]ll rights of commercial exploitation transferred by IDS Publishing to RPE shall be limited to the License Territory." (Complaint Ex. A at p. 3, Clause First (b).) Finally, IDS and RPE agreed "to do anything reasonable to create an effective, secure and high quality Reiss Profile test solution which meets the quality standards set by RPE *for the different local European markets.*" (Complaint Ex. A at p. 7, Clause Ninth (d) (emphasis added).)

### 3. The License Payments

Additionally, the License required various payments by RPE to IDS – all priced in euro currency, and to be paid in euros. For example, RPE had to pay IDS: 60,000 euros within several months of signing; "10 euros per copy" of each "Test"; a "one-time flat fee of 250 euros" for existing trained "Masters"; and "a one-time fee of 100 euros" for each new Master. (Complaint Ex. A at pp. 5-6, Clause Seventh.) Moreover, the prices were subject to annual increments "done on the basis of the Dutch CBS inflation," or, if necessary, "some other widely used measure of Dutch inflation[.]" (Complaint Ex. A at p. 6, Clause Seventh (h).)

Pursuant to IDS's instructions, RPE wired its payments in euros to IDS. For almost four years those payments were sent to an account held in Missouri, through an intermediary bank in Great Britain. (Delnoy Dec. ¶ 11; Boltersdorf Dec. ¶ 11.)

### C. Prior Dispute And Pending Litigation In Germany

In January and February 2016, IDS and RPE exchanged letters regarding a dispute under the License. IDS was represented by a lawyer in the Netherlands, Ms. Esther Mommers. In January 2016, Ms. Mommers sent a demand letter, to which RPE's German counsel, Dr. Holger Müller, replied. In February, Dr. Müller sent another letter to Ms. Mommers, stating that IDS violated the License by offering for sale the Reiss Profile tests in Germany (*i.e.*, within the License Territory), to which she never substantively replied. (Müller Dec. ¶¶ 3-5; Müller Dec. Ex. A, B & C.)[3]

---

[3] Also in February 2016, RPE was sent a letter by IDS's counsel, who was located in Washington, D.C. (Complaint Ex. D & E.) Indeed, that same Washington, D.C.-based attorney sent a letter to Mr. Boltersdorf and Dr. Müller, both in Germany, one year earlier. (Complaint Ex. B.)

IDS continued its infringing activity, so RPE filed suit in Germany. In March 2016, the court issued a preliminary injunction against IDS, without oral argument, enjoining it from offering the Reiss Profile for sale in Germany. The injunction remains in force and the litigation remains pending. (Müller Dec. ¶ 6; Müller Dec. Ex. D-1 & D-2.)[4]

At no point prior to this litigation, including in the License negotiation, was RPE or its counsel ever contacted by an Ohio-based attorney for IDS. (Delnoy Dec. ¶ 12; Boltersdorf Dec. ¶ 12; Müller Dec. ¶ 7; Koeveringe Dec. ¶ 6.)

## D.      The Complaint's Allegations And Causes Of Action

The Complaint alleges five causes of action: copyright infringement, trademark infringement, damages to business reputation, breach of contract, and fraud and conversion.

*First*, regarding copyright and trademark infringement, IDS alleges that it holds a United States copyright, two registered trademarks, and similar intellectual property rights in Europe (obtained by RPE and assigned to IDS). (Complaint ¶ 10; Complaint Ex. J.) IDS alleges that RPE violated the United States Copyright Act by modifying the Reiss Profile, developing a derivative work, potentially competing with IDS, and using revised score reports and insufficiently trained "Masters." (Complaint ¶¶ 35-48.) Similarly, IDS alleges that RPE violated the Lanham Act by using the words "Reiss Profile" and "Motivation" in parts of its business names, and using its own scoring services. (Complaint ¶¶ 49-59.) All of those allegations concern actions taken by RPE within the License Territory – and none in the United States.

*Second*, regarding damages to business reputation, IDS alleges that "customers will feel betrayed" in the future by RPE's actions and IDS may face litigation. (Complaint ¶¶ 60-64.)

---

[4] Germany has jurisdiction over that case under the limited forum selection clause in the License, which states that "RPE shall have the right to initiate and execute lawsuits within the License Territory for the purpose of protecting rights granted under this Agreement." (Complaint Ex. A at p. 6, Clause Eighth (b).)

*Third,* IDS alleges an assortment of contract breaches by RPE, including translating the Reiss Profile, developing a competing assessment, sharing confidential information with the University of Luxembourg, improperly granting sublicenses, and using its own scoring software and interpretation reports.  (Complaint ¶¶ 65-78.)

*Finally*, IDS alleges that RPE perpetrated a fraud because RPE entered into the License (ten years ago) only to obtain IDS's confidential information.  (Complaint ¶¶ 80, 91, 92.) Moreover, in a conclusory fashion, IDS alleges that it "justifiably relied upon RPE's representations in the License and, based upon those representations, granted RPE access to its copyright and trademarks."  (Complaint ¶ 82.)  The purported evidence of RPE's intent is that RPE has not exploited the License to its fullest and that RPE voluntarily terminated the License. (Complaint ¶¶ 85, 90.)  Additionally, IDS alleges as fraud that RPE improperly sold shares of its business.  (Complaint ¶ 87.)

Regardless of the merits of any of these claims, any pertinent RPE witnesses and documentation is located in Europe, mostly in the Netherlands or Germany.  Additionally, a vast majority of the documents are in foreign languages – either German or Dutch.  (Delnoy Dec. ¶ 13; Boltersdorf Dec. ¶ 13.)

**ARGUMENT**

**I.**

**PLAINTIFF CANNOT ESTABLISH
THE COURT'S PERSONAL JURISDICTION OVER DEFENDANT**

Plaintiff has the burden of establishing, with reasonable particularity, the nature and extent of the non-resident defendant's contacts with Ohio so as to permit an Ohio court to exercise personal jurisdiction over RPE.  *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000); *Campinha-Bacote v. Wick*, 2015 WL 7354014, at *2 (S.D. Ohio Nov. 20, 2015).

Plaintiff must show that jurisdiction "meets both the state long-arm statute and constitutional due process requirements." *Calphalon,* 228 F.3d at 721 (internal citations omitted); *see also Goldstein v. Christiansen*, 70 Ohio St.3d 232, 638 N.E.2d 541, 543 (1994); *Campinha-Bacote*, 2015 WL 7354014, at *2. IDS, however, fails on both fronts. First, Ohio's long-arm statute is inapplicable because IDS cannot show that RPE transacted business in Ohio. Additionally, IDS is unable to establish that this Court's exercise of personal jurisdiction would satisfy constitutional concerns. Therefore, this case should be dismissed for lack of jurisdiction.[5]

## A.     Ohio's Long-Arm Statute Does Not Apply

IDS relies only on Ohio Revised Code § 2307.382(A)(1) as its basis for personal jurisdiction over RPE. (Complaint ¶ 4.) That provision of Ohio's long-arm statute permits a court to exercise personal jurisdiction for a cause of action that arises from a defendant's "[t]ransacting any business in this state[.]" R.C. § 2307.382(A)(1). Whether a nonresident did so is determined on the facts specific to the transaction. *U.S. Sprint Commc'ns Co. Ltd. Partnership v. Mr. K's Foods, Inc.*, 68 Ohio St.3d 181, 624 N.E.2d 1048, 1052 (1994). Looking at the totality of the facts, RPE clearly has not transacted business in Ohio, rendering jurisdiction plainly unavailable.

The transaction at issue is the License that IDS and RPE executed in 2006 – which is completely untethered from Ohio.[6] The only in-person meetings concerning negotiation of the License were held in Germany – where IDS travelled to meet RPE. Contrastingly, no RPE

---

[5] Since, IDS relies only on an assertion of specific jurisdiction and not general jurisdiction (Complaint ¶ 4), RPE focuses herein only on whether specific jurisdiction exists. In any event, there is no doubt that general jurisdiction is unavailable under the Supreme Court's ruling in *Daimler AG v. Bauman*, 134 S. Ct. 7461 761 (2014), because RPE's Ohio contacts are clearly not "continuous and systematic as to render [RPE] essentially at home in" Ohio.

[6] IDS's office in Ohio, despite failing to procure the necessary license to operate there (R.C. § 1703.03), is an improper jurisdictional consideration because the only relevant contacts are those of RPE, as discussed below.

representative travelled to Ohio for the negotiations.  (Delnoy Dec. ¶¶ 4, 5, 9; Boltersdorf Dec. ¶¶ 4, 5, 9.)

Moreover, the License does not concern the United States—let alone Ohio—*at all*.  The License grants RPE rights and obligations only in certain European countries.  "All rights of commercial exploitation transferred by IDS Publishing to RPE shall be limited to the License Territory," defined as "the nations of Germany, Netherlands, Belgium, Luxembourg, France, and Italy…but nowhere else."  (Complaint Ex. A at p.3.)  Critically, therefore, RPE has no rights – and the License expressly precludes RPE from operating – anywhere outside the License Territory.  That of course includes the United States and Ohio.  Indeed, RPE never made a single sale pursuant to the license within the United States (as it could not), nor did it conduct any marketing or deliver any product anywhere in the United States, or otherwise earn any revenue from the United States.  (Delnoy Dec. ¶ 10; Boltersdorf Dec. ¶ 10.)

Naturally, the License required all payments to be made in euro currency, and for almost four years payments were made by wire transfer from the Netherlands, through Great Britain, to an account in Missouri (not Ohio).  (Delnoy Dec. ¶ 11; Boltersdorf Dec. ¶ 11; Complaint Ex. A at pp. 5-6, Clause Seventh.)

The limited contacts IDS relies upon to establish jurisdiction – RPE sent the executed License, paid, and dealt with IDS in Ohio (Complaint ¶ 4) – are all insufficient as a matter of law, as they do not amount to the transaction of business in Ohio.  Not surprisingly, personal jurisdiction is improper when a defendant's sole contacts are (i) contracting with an Ohio corporation and (ii) sending payments there – even when a choice-of-law provision mandates application of Ohio law.  *Natl. City Bank v. Yevu*, 898 N.E.2d 52 (Ohio Ct. App. 2008) (reversing, with instruction to dismiss for lack of personal jurisdiction).  That holding applies

with even more force here because IDS is not an Ohio corporation, RPE wired payments for years to Missouri, and there is no choice-of-law provision. *See also Epic Commc'ns, Inc. v. Progressive Commc'ns, Inc.*, 2008 WL 1930419, at \*4 (N.D. Ohio Apr. 30, 2008) (granting motion to dismiss for lack of personal jurisdiction where foreign corporation negotiated contract by phone, then signed and faxed a contract to Ohio, and sent payments to Ohio); *Epic Commc'ns v. ANS Connect*, 2008 WL 2766285 (Ohio Ct. App. July 17, 2008) (affirming dismissal for lack of personal jurisdiction against a foreign corporation where defendant's contacts were limited to negotiations by phone, faxing a signed contract to Ohio, and being obligated to send payments there); *Alpha Telecom., Inc. v. ANS Connect*, 2008 WL 2487248 (Ohio Ct. App. June 19, 2008) (affirming motion to dismiss for lack of personal jurisdiction where defendant negotiated contract by telephone, faxed the signed contract to Ohio, sent other faxes, mail and email to Ohio, and plaintiff performed contract in Ohio).

Indeed, particularly instructive is the decision in *LaFarge N. Am., Inc. v. Forbes*, 2008 WL 4877312 (Ohio Ct. App. Nov. 3, 2008), where the appellate court affirmed the dismissal for the lack of jurisdiction. *LaFarge* concerned "a foreign corporation purchasing a product from another state from another foreign corporation, which happens to have an office in Ohio." *Id.* at \*4. That is remarkably similar to the situation here – as both IDS and RPE are foreign corporations, and IDS happens to have an Ohio office. Moreover, in *LaFarge*, there was "quite simply no business of any type taking place in or concerning Ohio under the parties' agreement." *Id.* Here too, as the License Territory *excluded* the United States. Finally, the parties' Ohio contacts in *LaFarge* – limited to telephone contacts and signing the agreement – was held insufficient "to create a 'substantial connection' with Ohio in order to declare that [defendant] was 'transacting business' under these circumstances." *Id.* (citing *Burger King Corp. v.*

11

*Rudzewicz*, 471 U.S. 462 (1985)).  The contacts here are even more limited: IDS travelled to Germany to negotiate the License, while RPE did not travel to Ohio; the License Territory excluded the United States; a signed version of the License was only faxed to IDS; and only a subset of payments were made to Ohio.

Accordingly, RPE did not transact business in Ohio.

**B.     Jurisdiction Over Defendant**
**Would Violate Federal Due Process**

Even if IDS could satisfy Ohio's long-arm statute – but it cannot – IDS must show that personal jurisdiction over RPE arising from RPE's contacts with Ohio would satisfy the Due Process Clause of the Fourteenth Amendment.  A "nonresident generally must have 'certain minimum contacts…such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *Walden v. Fiore*, 134 S.Ct. 1115, 1121(2014) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  "[T]he relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State."  *Id.* at 1122 (internal citation omitted).  Thus, that analysis "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there."  *Id.*  Further, there are "[s]pecial concerns" when the defendant is a foreign company.  *Nationwide Mut. Ins. Co. v. Tryg Intl. Ins. Co., Ltd.*, 91 F.3d 790, 797 (6th Cir. 1996).

Personal jurisdiction "satisfies due process if 'the defendant purposefully avails itself of the privilege of conducting activities within the forum State,' such that it 'should reasonably anticipate being haled into court there.'"  *Id.* at 793 (quoting *Hanson v. Denckla,* 357 U.S. 235, 253 (1958) and *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980)).  The "'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction

solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Id.* at 795 (internal citations omitted).

This Circuit uses a three-part test to make that determination. The defendant must "purposefully avail himself of the privilege of acting in Ohio"; "the cause of action must arise from the defendant's activities there"; and defendant's acts must have a "substantial enough connection" to make "the exercise of jurisdiction over the defendant reasonable." *Calphalon*, 228 F.3d at 721 (citing *Southern Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)).

Merely knowing that actions may have an effect in Ohio "is not enough to show purposeful availment." *Campinha-Bacote*, 2015 WL 7354014, at *5 (citing *Walden*, 134 S. Ct. at 1125). Therefore, like here, jurisdiction is not available where a defendant uses "a copyright owned by a person in Ohio and had knowledge that Plaintiff resided in and/or conducted business in Ohio such that Defendant knew the injury would occur in Ohio[.]" *Id.* at *4. (citing *Maxitrate Tratamento Termico E Controles v. Super Sys., Inc.*, 617 Fed. Appx. 406, 407 (6th Cir. 2015), *cert denied sub nom.*, *Maxitrate Tratamento Termico E Controles v. Allianz Seguros S.A.*, 136 S.Ct. 336 (2015)). Moreover, RPE's limited payments to Ohio, and its contract with an Illinois corporation that had an Ohio office, is insufficient to exercise jurisdiction. *Nationwide Mut.*, 91 F.3d at 795, 796.

The Sixth Circuit's decision in *Calphalon* is on-point. In *Calphalon*, the parties agreed that defendant would represent plaintiff in states other than Ohio, and "performance of the agreement was not focused on exploiting any market…in the state of Ohio." *Calphalon*, 228 F.3d at 723. Here too, the License did not concern Ohio at all, but only "exploiting" certain European markets. Further, defendant in *Calphalon* called, mailed, faxed and visited the

13

plaintiff in Ohio, simply because plaintiff was headquartered there. *Id.* RPE's contacts to Ohio – even more limited – were likewise solely the result of plaintiff's Ohio office. Further, "[t]he use of interstate facilities such as the telephone and mail is a 'secondary or ancillary' factor and 'cannot alone provide the minimum contacts required by due process.'" *Reynolds v. Intl. Amateur Athletic Fed'n.*, 23 F.3d 1110, 1119 (6th Cir.) (internal citation omitted, alterations in original), *cert. denied*, 115 S. Ct. 423 (1994). Thus, RPE's contacts, like the defendant in *Calphalon*, "were precisely the type of 'random,' 'fortuitous,' and 'attenuated' contacts that the purposeful availment requirement is meant to prevent from causing jurisdiction[.]" *Calphalon*, 228 F.3d at 723 (internal citation omitted).

Next, the Court held that the "the 'arising from' requirement…is satisfied when the operative facts of the controversy arise from the defendant's contacts with the state," but this action arises solely from RPE's actions in Europe. *Id.* at 723-24; *see* Facts, D.

And regarding reasonableness, the Court held that since the defendant earned commissions in the contract's sales territory (not Ohio), defendant did not have a "substantial connection" to Ohio such that "exercise of jurisdiction over the defendant [is] reasonable." *Calphalon*, 228 F.3d at 724. *See also Matrix Essentials, Inc. v. Harmon Stores, Inc.*, 205 F. Supp. 2d 779, 787-88 (N.D. Ohio 2001).

The same applies here because RPE (and this action as a whole) had no connection (and certainly not one that is substantial) to Ohio. This case is between two companies that are foreign to Ohio. RPE, a Dutch corporation with no Ohio (or U.S.) connection, is not licensed to conduct business in the United States; has no employees in the United States; has no office, registered agent, or any property in the United States. (Delnoy Dec. ¶ 3; Boltersdorf Dec. ¶ 3.) Further, the License concerned only the License Territory, i.e., markets in Europe. IDS, in turn,

14

is an Illinois corporation that, up until May 31, 2016, was not licensed to conduct business in Ohio. (Evans Dec. ¶¶ 3-4; Evans Dec. Ex. B & C.) And RPE never made a single sale within the United States, or otherwise marketed or delivered any product in or to the United States. Thus, it is not reasonable to foresee that RPE's actions in Europe would necessitate litigation in Ohio.

The Due Process Clause thus compels dismissal due to RPE's lack of minimum contacts with Ohio.

## II.

## <u>FORUM NON CONVENIENS COMPELS DISMISSAL OF THIS ACTION</u>

A case should be dismissed on forum non conveniens grounds where the defendant shows (1) that there is an available and adequate alternative forum, and (2) that the balance of private and public interest factors favors dismissal. *Barak v. Zeff*, 289 Fed. Appx. 907, 910 (6th Cir. 2008) (affirming dismissal for forum non conveniens); *Rustal Trading US, Inc. v. Makki*, 17 Fed. Appx. 331, 335-36 (6th Cir. 2001) (same). Since both the private and public factors support dismissal, and there is an adequate alternative forum, RPE's motion for dismissal for forum non conveniens should be granted.

## A.  <u>There Is An Adequate Alternative Forum</u>

The Netherlands is an adequate and available forum. "This requirement is normally satisfied when the defendant is 'amenable to process' in the foreign jurisdiction." *Rustal Trading*, 17 Fed. Appx. at 335 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n. 22 (1981)). RPE is amenable to process in the Netherlands. (Koeveringe Dec. ¶ 3.)

The alternative forum may be inadequate, however, if there is no proper remedy and there are "serious obstacles to conducting litigation [there], such as a well-founded fear of persecution[.]" *Id.* at 335. No such concern exists here. The Netherlands recognizes causes of

action for those claims asserted in the complaint. (Koeveringe Dec. ¶ 4.) Federal courts have acknowledged that previously. *See e.g.*, *Evolution Online Sys., Inc. v. Koninklijke Nederland N.V.*, 41 F. Supp. 2d 447 (S.D.N.Y. 1999) (dismissing case on forum non conveniens case which contained allegations for breach of contract and copyright infringement, holding Netherlands was an adequate forum). Thus, Netherlands is clearly an adequate and available alternative forum. *See Barak*, 729 Fed. Appx. at 910-11.[7]

**B.      The Private Interests Favor Dismissal**

The Supreme Court has set forth several "private interests" that should be weighed. *See Piper Aircraft*, 454 U.S. at 241 n. 6. Doing so here supports dismissal as the Netherlands is clearly the proper forum, where both IDS and RPE already have retained counsel.

One private interest cited by the Supreme Court which tilts toward dismissal is "the relative ease of access to sources of proof[.]" *Id.* (internal citation omitted). Here, "the bulk of the documents and records constituting necessary proof in the litigation" are located abroad. *See Barak*, 289 Fed. Appx. at 912. The parties primarily negotiated the License in Germany and IDS's allegations chiefly concern actions taken by RPE in Europe. For example, the alleged infringement of IDS's copyright and trademark, breach of the License, and perpetration of a fraud all arise from actions taken by RPE in Europe. (*See* Facts, D.) Accordingly, the witnesses who would testify, and any documentary evidence, are all located in Europe. (Delnoy Dec. ¶ 13; Boltersdorf Dec. ¶ 13.)

By comparison, IDS would only need few witnesses and documents to present its case. There would be virtually no testimony by IDS concerning RPE's actions – as no IDS witness could present admissible testimony concerning, for example, whether RPE improperly translated

---

[7] Alternatively, Germany, where litigation is currently pending, may also be a proper alternative. (Müller Dec. ¶ 8.)

the Reiss Profile, developed a mobile application, altered the Reiss Profile, or disclosed confidential and trade secret information to the University of Luxembourg. (Complaint ¶¶ 28, 29, 39, 41, 69).

Another private interest supporting dismissal is the "availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses[.]" *Piper Aircraft,* 454 U.S. at 241 n. 6 (internal citation omitted). The many potential witnesses located in Europe frustrates that availability and increases the costs of appearance, including the complications arising from the lack of a U.S. court's power to compel certain foreign citizens to appear for testimony.

Moreover, a vast majority of RPE's documents are in Dutch and German, thus necessitating costly translations, yet another "recognized factor supporting dismissal on the basis of forum non conveniens." *Barak*, 289 Fed. Appx. at 913. (Delnoy Dec. ¶ 13; Boltersdorf Dec. ¶ 13.) And the documents are subject to European Union privacy laws, which could further complicate their production in this litigation. For example, IDS alleges that RPE has certified approximately 1,000 individuals as "Masters"; IDS has demanded identification of each Master; and RPE has refused to disclose that information. (Complaint ¶¶ 72-73.) By providing that information, however, and any specific identification of any Master (as well as any other RPE client or customer), RPE would violate the law. (Koeveringe Dec. ¶ 5; Müller Dec. ¶ 9.)

Thus, many "practical problems" will complicate litigating this case in the United States, which make the trial far from "easy, expeditious and inexpensive." *Piper Aircraft,* 454 U.S. at 241 n. 6 (internal citation omitted). On balance, the Netherlands provides a more efficient, less expensive forum to litigate this dispute.

17

**C.      The Public Factors Also Support Dismissal**

An analysis of the "public factors" also supports trial in the Netherlands.

**1.      Ohio Does Not Have A Local Interest In,
And Would Be Burdened By, This Action**

The first public factor identified by the Supreme Court is the "'local interest in having localized controversies decided at home[.]'" *Piper Aircraft,* 454 U.S. at 241 n. 6.  Yet this action is a dispute between a Dutch and Illinois corporation, concerning a contract negotiated in Germany, giving RPE rights in certain European countries.  Also considered is "the unfairness of burdening citizens in an unrelated forum with jury duty." *Id.*  The forum is clearly "unrelated," and IDS has demanded a jury trial.

**2.      Ohio Does Not Have An Interest In Applying Its Own Law,
Because Dutch Law Should Govern**

Second, there is an interest in having a court apply its own law, and avoid the "unnecessary problems in conflict of laws, or in the application of foreign law[.]" *Piper Aircraft,* 454 U.S. at 241 n. 6.  This factor strongly supports dismissal because Dutch law should govern.  Ohio courts adopt the factors set forth in the Restatement (Second) of the Law of Conflicts to decide which state's laws apply to contract and tort claims. *Jamhour v. Scottsdale Ins. Co.*, 211 F. Supp. 2d 941, 949-52 (S.D. Ohio 2002).

Contract claims are governed by Section 188 of the Restatements (Second) of Conflict of Laws, which seeks to determine the state with "the most significant relationship to the transaction[.]" *Id.*  The relevant factors include the place of contracting, negotiation and performance, as well as the "domicile residence, nationality, place of incorporation and place of business of the parties." *Id.*; RESTATEMENTS (SECOND) OF CONFLICTS OF LAWS, § 188 (2).  The

first factor, places of negotiation and contracting, is "relatively insignificant" and "of less importance where there is no one single place of negotiation and agreement." *Jamhour,* 211 F. Supp. 2d at 950 (internal citations omitted). Here, the negotiation and agreement occurred in multiple places, predominantly Germany, and also the Netherlands, and Ohio. (Delnoy Dec. ¶¶ 4-8; Boltersdorf Dec. ¶¶ 4-8.) The second factor, contract performance, was *not* Ohio, but the "License Territory" of Germany, the Netherlands, Belgium, Luxemburg, France, and Italy. (Complaint Ex. A. at p. 3.) The third factor also clearly weighs heavily towards Dutch law since RPE is a Dutch corporation operating in the Netherlands, while IDS is an Illinois corporation. *See Jamhour*, 211 F. Supp. 2d at 951.

Turning to the fraud claims, Section 148 of the Restatements (Second) of Conflicts of Law governs, and also supports application of Dutch law. *See Id.* at 951-52. The relevant factors include where plaintiff acted in reliance upon defendant's representations, where plaintiff received those representations, defendant's location when it made them, each party's respective place of incorporation and of business, and where plaintiff is to render performance. *Id.*; RESTATEMENTS (SECOND) OF CONFLICTS OF LAW § 148. As explained below, IDS fails to identify specific fraudulent statements made by RPE, so RPE is hamstrung from weighing many of these factors. However, by necessity, any statements attributable to RPE must have been made in either Germany or the Netherlands because the only in-person meetings occurred in Germany, and RPE representatives never visited Ohio for the negotiations.[8] (Delnoy Dec. ¶¶ 4, 9; Boltersdorf Dec. ¶¶ 4, 9.) Moreover, like the contractual analysis, the party's respective

---

[8] Because IDS has not identified any specific misrepresentations, it cannot be determined where IDS was located when it allegedly received those statements.

places of incorporation and business, as well as plaintiff's obligation to render performance in Europe, all weigh in favor of Dutch law.

Accordingly, all of plaintiff's claims should be decided under Dutch law.

## III.

## PLAINTIFF FAILS TO STATE CLAIMS
## FOR COPYRIGHT AND TRADEMARK INFRINGEMENT

The Complaint concerns only non-U.S. actions taken by RPE. The Copyright Act, however, does not apply to those actions. Moreover, while the Lanham Act may apply extraterritorially in limited circumstances, it does not here. Therefore, the Complaint fails to state any cognizable claim of copyright or trademark infringement, and those claims must be dismissed.

### A.    The Copyright Act Does Not Apply To Defendant's Actions Abroad

"[I]t is a long-standing principle that United States copyright laws do not have extraterritorial operation." *Liberty Toy Co., Inc. v. Fred Silber Co.*, 149 F.3d 1183, *3 (6th Cir. 1998) (citing, inter alia, *Update Art, Inc. v. Modiin Publ'g, Ltd.*, 843 F.2d 67, 73 (2d Cir. 1988) ("It is well established that copyright laws generally do not have extraterritorial application.")); *Subafilms, Ltd. v. MGM–Pathe Commc'ns Co.*, 24 F.3d 1088, 1093 (9th Cir.1994) (en banc) (noting the "undisputed axiom that United States copyright law has no extraterritorial application"). Although if "some act of infringement occurred in the United States, the Copyright Act applies," – where, as here, "all the copying or infringement occurred outside the United States, the Copyright Act would not apply." *Liberty Toy*, 149 F.3d at *3.

Even if RPE infringed on IDS's copyright, there are no allegations in the Complaint that any such actions were taken within the United States. *See* Complaint. Indeed, RPE never took any actions within the United States concerning the copyrighted material because the License

concerned only certain European countries – which is where all of RPE's actions occurred and where it operates. (Delnoy Dec. ¶¶ 2-3, 10; Boltersdorf Dec. ¶¶ 2-3, 10.) IDS does not allege any such act occurred, nor can it. Accordingly, IDS fails to state a claim for copyright infringement.

**B.**     **<u>The Lanham Act Does Not Apply To Defendant's Actions Abroad</u>**

This court must balance three factors to determine if the Lanham Act applies to non-U.S. actions:

> To establish whether circumstances call for extraterritorial application of the Lanham Act, courts have traditionally considered: (1) whether the defendant's conduct has a substantial effect on commerce in the United States; (2) whether the defendant is a citizen of the United States; and (3) whether there exists a conflict between defendant's trademark rights established under foreign law, and plaintiff's trademark rights established under domestic law.

*Groeneveld Transp. Efficiency, Inc. v. Lubecore Intl., Inc.*, 730 F.3d 494, 536–37 (6th Cir. 2013) (dissent).[9] *See also Liberty Toy*, 149 F.3d at *3; *Mertik Maxitrol GMBH & Co. KG v. Honeywell Tech. Sarl,* 2011 WL 1454067, at *6 (E.D. Mich. Apr. 13, 2011).

Primarily, the second factor clearly supports dismissal because RPE is a Dutch citizen.

Next, IDS fails to allege any substantial effect on United States commerce, and cannot make any such showing. Simply, the License concerns only certain countries in Europe. None of RPE's products or services are available in the United States, and there is no claim that RPE offered them in the United States over the course of a ten-year relationship between the parties. *See Mertik Maxitrol,* 2011 WL 1454067, at *6. Mere speculation – even if there were any – by

---

[9] Because the majority concluded that there was no trademark violation, plaintiff's request that the injunction include Canada and the United States was "moot because [the court] set aside the injunction altogether." *Id.* at 521. Dissenting, Circuit Judge Helene White held the injunction should not be vacated, and thus had to address whether the injunction's scope should be broadened to include Canada. *Id.* at 536-37. In so doing, Judge White examined the extraterritorial application of the Lanham Act, as set forth above.

IDS that RPE's foreign actions will substantially effect United States commerce is insufficient. *Groeneveld*, 730 F.3d at 536-37.

The final factor also supports dismissal. Although RPE does not own a trademark in the European Union, there is a relevant trademark that RPE obtained and assigned to IDS. (Complaint Ex. J.) Moreover, the License confers rights upon RPE to exploit the trademarks at issue in the License Territory. Thus, RPE's rights and obligations are governed by the EU trademark and the License. Any ruling on the infringement of a U.S. trademark, because of actions RPE took in Europe, could conflict with RPE's rights.

Thus, all three factors weigh against applying the Lanham Act extraterritorially here, and IDS's claim for trademark infringement must be dismissed.

## IV.

### PLAINTIFF'S FRAUD CLAIM IS DUPLICATIVE OF ITS CONTRACT CLAIM, AND MUST BE DISMISSED

Should this Court hold that U.S. law governs IDS's fraud claim, it should be dismissed for failure to state a claim. *First*, "[i]n Ohio, a breach of contract does not create a tort claim." *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 684 N.E.2d 1261, 1270 (Ohio Ct. App. 1996) (citing *Wolfe v. Continental Cas. Co.*, 647 F.2d 705, 710 (6th Cir. 1981), *dismissed sua sponte*, 676 N.E.2d 531 (1997)). Rather, "the existence of a contract action excludes the opportunity to present the same case as a tort claim." *Id.* (internal citation and alternations omitted). Accordingly, "[a] tort claim based upon the same actions as those upon which a claim of contract breach is based will exist independently of the contract action *only if* the breaching party also breaches a duty owed separately from that created by the contract, that is, a duty owed even if no

contract existed." *Id.* (emphasis added) (citing *Battista v. Lebanon Trotting Assn.*, 538 F.2d 111, 117 (6th Cir. 1976)).[10]

IDS fails to allege any independent duty that RPE has breached. Instead, the fraud claim merely duplicates the contract claim. Attempting to plead the misrepresentation upon which it relied, IDS identifies only "RPE's representations in the License[.]" (Complaint ¶ 82.) Moreover, IDS claims that RPE's sale of shares in its business without IDS's approval is fraud (Complaint ¶ 87) – but, even if true, that is a breach of contract, as IDS concedes (*see* Complaint ¶ 28 ("IDS notified RPE of a number of violations of the License, demanding that RPE cease and desist from those activities, including…creating an unauthorized…business that appeared to be selling RPE shares to investors")).[11]

*Second*, IDS has failed to sufficiently plead fraud, which has heightened pleading requirements and must be done with particularity. Fed. R. Civ P. 9(b). Fraud is alleged where a party is damaged by its justifiable reliance on a knowing misrepresentation of a material fact, made with intent of misleading another into relying on it. *RAE Assocs.*, 36 N.E.3d at 762.

Rather than plead with any particularity, IDS alleges solely in a conclusory fashion and "upon information and belief." For example, IDS claims it "justifiably relied upon RPE's representations in the License and, based upon those representations, granted RPE access to its

---

[10] *See also RAE Assocs., Inc. v. Nexus Commc'n, Inc.*, 36 N.E.3d 757, 762 (Ohio Ct. App. 2015) ("This court has held that a tort claim, such as fraud, generally cannot duplicate the factual and legal elements of a parallel claim for breach of contract"), *appeal not accepted*, 45 N.E.3d 244 (2016), *reconsideration denied sub nom.*, *RAE Assoc., Inc. v. Nexus Commc'n, Inc.*, 145 Ohio St.3d 1447, 48 N.E.3d 585 (2016).

[11] Although the identification of Count V is "Fraud and Conversion," IDS does not attempt to plead a cause of action for conversion. There is no allegation that RPE actually converted anything, nor any pleading that RPE refused to deliver property to its rightful owner after demand. *See Dice v. White Family Cos.*, 878 N.E.2d 1105, 1109 (Ohio Ct. App. 2007); *Barnes v. First Am. Title Ins. Co.*, 2006 WL 2265553, at *8 (N.D. Ohio Aug. 8, 2006). In any event, a conversion claim would have to be dismissed because, like fraud, IDS would have to plead the breach of a duty that is owed independently of the contract, which it has not done. *Barrett-O'Neill v. Lalo, LLC*, 2016 WL 1110319, at *16-17 (S.D. Ohio Mar. 22, 2016).

copyright and trademarks." (Complaint ¶ 82.) It fails to identify any specific representation, or anything apart from the License. Further, IDS implausibly alleges that RPE fraudulently entered into the License to steal IDS's intellectual property. (Complaint ¶¶ 80, 81, 91, 92.) The totality of purported supporting allegations is simply (i) that RPE did not "exploit the License to its fullest" (which, if true, may be a contractual breach), and, remarkably, (ii) that RPE "voluntary terminate[d] the License" – *ten years after the License was executed*. (*See* Complaint ¶¶ 85, 90.) IDS also claims RPE's ownership structure and sale of its shares is a fraud (Complaint ¶¶ 86-87), but there is no allegation of any material misrepresentation made by RPE that IDS justifiably relied upon. And finally, no damages are alleged.

In sum, the fraud claim must be dismissed.

## V.

### THE "DAMAGES TO BUSINESS REPUTATION" CLAIM IS IMPROPERLY SPECULATIVE

IDS claims damages to its "business reputation" because of the possibilities that certain "customers *will feel betrayed when they eventually realize* that RPE has used non-licensed training materials…" and "*could be unjustly subject to litigation* from these customers…, which at a minimum would give rise to litigation costs to defend itself." (Complaint ¶¶ 61, 63 (emphasis added).) However, damages "must be shown with certainty, and damages that are merely speculative will not give rise to recovery." *RAE Assocs.*, 36 N.E.2d at 764 (citing *Moton v. Carroll*, 2002 WL 206196 (Ohio Ct. App. Feb. 12, 2002)). IDS here pleads nothing more than speculative, potential future damages. Accordingly, this claim should be dismissed.

## CONCLUSION

For the foregoing reasons, RPE respectfully requests that plaintiff's complaint should be dismissed with prejudice.

Dated: September 14, 2016

Respectfully submitted,

*/s/ Michael T. Altvater*
John B. Schomer (#0055640)
Leigh A. Maxa (#0076847)
Michael T. Altvater (#0084389)
Terry J. Evans (#0088399)
Krugliak, Wilkins, Griffiths & Dougherty Co., LPA
50 South Main Street / Suite 501
Akron, Ohio 44308
(330) 535-4830 / Fax (330) 535-4809
jschomer@kwgd.com; lmaxa@kwgd.com;
maltvater@kwgd.com; tevans@kwgd.com

David N. Levy (NY #4900569)
*Pro hac vice admission forthcoming*
Matalon Shweky Elman PLLC
450 Seventh Avenue, 33rd Floor
New York, New York 10123
Tel: (212) 244-9000
dlevy@mselaw.com

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of September, 2016, a copy of the foregoing *Defendant's Memorandum of Law in Support of Its Motion to Dismiss the Complaint* was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

*/s/ Michael T. Altvater*
*Counsel for Defendant*