UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

IDS PUBLISHING CORPORATION

    Plaintiff,

v.

REISS PROFILE EUROPE, B.V.,

    Defendant.

Case No. 2:16-CV-00535
CHIEF JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Kimberly A. Jolson

## OPINION AND ORDER

This matter is before the Court on Defendant's Motion to Dismiss the Complaint. For the reasons that follow, Defendant's Motion is **GRANTED**.

### I.

Plaintiff, IDS Publishing Corporation ("IDS"), is a for-profit corporation incorporated in the State of Illinois and licensed as a foreign for-profit corporation in Ohio as of May 31, 2016.[1] (Complaint "(Compl.") ¶ 1, ECF No. 1.) IDS has its principal place of business in Columbus, Ohio. (*Id.*) IDS is a global publisher of assorted psychological assessments and was founded by Dr. Steven Reiss in 1988. (*Id.* ¶ 8.) Dr. Reiss was an expert in psychological assessments and published books in the area of motivational psychology. (*Id.* ¶ 6.) Dr. Reiss also wrote the Reiss Motivation Profile ("Reiss Profile"), a "standardized instrument for measuring the root causes of human motivation and behavior." (*Id.* ¶ 8.) As IDS explains in its Complaint, the Reiss Profile

---

[1] In its Motion to Dismiss, RPE argues that "IDS only became licensed as a foreign corporation in Ohio…to enable IDS to prosecute this case." (Defendant's Memorandum in Support of its Motion to Dismiss ("Def.'s Mot.") at 3, ECF No. 18-1.) Under Ohio law "the failure of any corporation to obtain a license . . . does not affect the validity of any contract with such corporation, but no foreign corporation that should have obtained such license shall maintain any action in any court until it has obtained such license." Ohio Rev. Code § 1703.29(A). IDS registered as a foreign corporation "[o]n or about May 29, 2016" and paid the fees specified by the Secretary of State. (Maggi Reiss Decl. ¶ 4, ECF No. 21-2.) The Ohio Secretary of State recognizes IDS' filing for a foreign license as of May 31, 2016. (Evans Decl. Ex. B at pageID 160, ECF No. 18-13.) Thus, as IDS appears to have appropriately filed for a foreign license before it filed the Complaint on June 13, 2016, it is immaterial whether or not it filed "only to enable IDS to prosecute." (Def.'s Mot. 3.)

1

"captures specifically identified dimensions of individual personality" for use in "different types of personal evaluations including those related to business consulting, HR decision-making, educational counseling, and personal coaching." (*Id.* ¶ 9.)

IDS holds a United States copyright in the Reiss Profile (United States Copyright Registration TX-5-488-769), and United States Patent and Trademark Office trademarks for the "Reiss Motivation Profile" (No. 3724884) and "Reiss Profile" (No. 4117758). (*Id.* ¶ 10.) In Europe, IDS holds trademarks issued by the Office for Harmonization in the Internal Market (the European Union Intellectual Property Office as of March 26, 2016) for "Reiss Profile" (No. 009540691) and "Reiss Motivational Profile" (No. 010508273). (*Id.*)

Defendant, Reiss Profile Europe, B.V. ("RPE"), is a corporation incorporated and operating in the Netherlands. (*Id.* ¶ 2.) RPE is owned by Peter Boltersdorf, John J.M. Delnoy, and Thomas Staller. (*Id.* ¶ 12.) RPE represents that it "does not have in Ohio . . . any employees, documents, offices, registered agents, or property." (Defendant's Memorandum in Support of its Motion to Dismiss ("Def.'s Mot.") at 4, ECF No. 18-1.)

IDS had a previous contractual relationship with Helmut Fuchs, in which IDS granted "exclusive marketing rights" of the Reiss Profile to Helmut Fuchs in Europe. (Steven Reiss Decl. ¶ 33, ECF No. 21-3.) In 2006, IDS canceled Helmut Fuch's marketing rights in accordance with a clause in the parties' agreement. (*Id.*) The prior summer of 2005, Dr. Reiss visited Frankfurt, Germany to give a lecture, and the parties do not dispute that Dr. Reiss and Peter Boltersdorf had a face-to-face conversation regarding the license. (Steven Reiss Decl. ¶ 35; Def.'s Mot. at 4.) However, the parties do dispute the content of their conversation in Frankfurt. IDS asserts that Mr. Boltersdorf asked Dr. Reiss to "terminate the license then in place with Helmut Fuchs" to grant a new license for his "corporate entity yet to be formed," and that Dr. Reiss did not make

2

any promises to him at that time. (Steven Reiss Decl. ¶ 35.) RPE claims that Dr. Reiss and RPE representatives, including Mr. Boltersdorf, met twice in the summer of 2005 in Europe where they "reached a general agreement." (Def.'s Mot. at 4.)² RPE supports its claim with signed affidavits by Mr. Delnoy and Mr. Boltersdorf. (Delnoy Decl. ¶¶ 4–5, ECF No. 18-9; Boltersdorf Decl. ¶¶ 4–5, ECF No. 18-10.) For the purposes of this motion, the Court views their statements as uncontested claims since the Plaintiff has not contradicted with admissible "specific facts" arguing otherwise. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).

At some point after the summer of 2005, IDS and RPE negotiated the details of the License Agreement ("License") through email communications directed to Steven Reiss in Ohio. (Plaintiff's Response to Def.'s Mot. ("Pl.'s Resp.") at 19, ECF No. 21; Def.'s Mot. at 5.) RPE's European attorneys reviewed the draft license during negotiations and faxed the completed License to Steven Reiss in Ohio for him to sign in October 2006. (Def.'s Mot. at 5; Steven Reiss Aff. ¶¶ 40–42.) In mid-October 2006, IDS and RPE entered into the License Agreement. (License Agreement ("License"), ECF No. 1-1; Compl. ¶ 11.)

The Reiss Profile "consists of 128 items or psychological questions, a 44-page user

---

² Ordinarily, in the absence of an evidentiary hearing, the Court would be "required to consider such information in a light most favorable to the plaintiff." *Grigor v. Starmark Hosp. Grp. LLC*, No. 2:10-cv-20, 2010 WL 2403137, at *3 (S.D. Ohio June 10, 2010). However, in the time since IDS filed this case, Dr. Reiss passed away. (*See* Hicks Decl. ¶ 17, ECF No. 21-1.) Accordingly, Dr. Reiss is an unavailable declarant under Fed. R. Evid. 804(a)(4). RPE argues that this Court cannot consider the affidavit by Dr. Reiss as "statements made by [a deceased affiant] in an affidavit are inadmissible to prove the facts stated therein." (Reply Memorandum in Support of Def.'s Mot. ("Def.'s Reply") at 6, ECF No. 22.)

Typically, affidavits by deceased individuals "are not admissible at trial because [d]efendants would not have an opportunity to cross-examine the declarants." *Beal v. Walgreen Co.*, No. 05-2237, 2009 WL 10665189, at *3 (W.D. Tenn. Mar. 3, 2009), *aff'd in part sub nom. Beal ex rel. Putnam v. Walgreen Co.*, 408 F. App'x 989 (6th Cir. 2010). If a declarant was not deposed, his or her statements cannot be converted in a form appropriate for trial. *Id.* As "it is improper for a court to consider hearsay statements when ruling on a motion to dismiss," the Court cannot consider the statements in Steven Reiss' affidavit unless they are subject to a hearsay exception under Fed. R. Evid. 804. *Beydoun v. Wataniya Rests. Holding, Q.S.C.*, 768 F.3d 499, 506 (6th Cir. 2014). The proponent of a statement has the "burden of showing that a statement fits within a hearsay exception." *Id.* (citing *United States v. Kendrick*, 853 F.2d 492, 496 n.3 (6th Cir. 1988)). IDS offers no arguments to persuade the Court that the statements in Dr. Reiss' affidavit are subject to a hearsay exception.

manual, 16 psychological norms, and an Internet based mechanical administration and scoring systems." (License at 3.) It "identifies specific dimensions of the individual personality" to analyze "what motivates a person over the age of 12." (Maggi Reiss Decl. ¶ 19, ECF No. 21-2.) Under the terms of the License, IDS granted RPE the exclusive right to market the Reiss Profile in "Germany, Netherlands, Belgium, Luxemburg, France, and Italy . . . but nowhere else." (*Id.*) In turn, RPE agreed to "commercially exploit only" copies of the Reiss Profile that it purchased directly from IDS, not to modify the Reiss Profile without written consent, and not to "develop its own version" or "to develop a competitive product." (*Id.*) The License provided that RPE could issue one sub-license for each nation in its territory after receiving written consent from IDS and paying an upfront fee. (*Id.* at 4.) Furthermore, RPE promised to "require each and every person or company holding a sub-license to purchase from IDS Publishing (indirectly)—via RPE (directly)—a minimum number of tests" each month. (*Id.*) Both parties agreed to take "reasonable precautions" to protect the "confidentiality of information" which might "adversely impact the commercial exploitation" of the Reiss Profile. (*Id.* at 5.) However, the License included the caveat that the License did not "restrict nonprofit, scientific research on the Reiss Profile," provided that the scientists published no more than six sample test items and did not publish or format the Reiss Profile's "psychological norms." (*Id.*) RPE agreed to pay IDS €60,000 (euros) for the rights granted by IDS, and €10 for each Reiss Profile "test" to be purchased "exclusively" from IDS. (*Id.*) The License does not include a forum selection or choice of law clause.

    The Reiss Profile is a "normative assessment" that requires a comparison between the performance of an individual test taker with all other test takers in the reference group. (Pl.'s Resp. at 3; Maggi Reiss Decl. ¶ 30.) Accordingly, the Reiss Profile must be "re-normed

4

periodically as data are collected on new test takers" to ensure that the assessment remains "valid and reliable." (Maggi Reiss Decl. ¶ 30.) During the License term, Dr. Reiss, in Ohio, re-normed the Reiss Profile twice with the help of Spinningwebz Services ("Spinningwebz"), IDS' technical service provider. (*Id.* ¶ 33; Pl.'s Resp. at 1.) After re-norming, IDS would incorporate the updated data into the Reiss Profile's "scoring algorithm" for RPE to use. (Maggi Reiss Decl. ¶ 33.)

The License grants RPE the right to use the Reiss Profile's psychological questions to learn information about an individual. (License at 2.) Authorized individuals, called "Masters," may administer the Reiss Profile to an individual. (Maggi Reiss Decl. ¶ 34.) After an individual answers all 128 questions, RPE, through the Masters, sends a file with the answers to IDS' server. (Hicks Decl. ¶ 11, ECF No. 21-1.) The IDS server is maintained by Spinningwebz and was originally located in New York but moved to Arizona sometime in 2011. (*Id.* ¶¶ 14, 16.) The responses are scored using a "complex mathematical formula, developed exclusively for IDS by Spinningwebz for scoring the [Reiss Profile]." (*Id.* ¶ 8.) When the scoring is complete, the scores are sent to RPE from IDS' server. (*Id.* ¶ 12.) After RPE receives the scores for each of the Reiss Profile's sixteen norms, it "generates an interpretative report for each test taker," as originally written by Dr. Reiss. (*Id.* ¶ 38.) Until his death, Dr. Reiss oversaw the ongoing scoring of the Reiss Profile from in Columbus, Ohio. (*Id.* ¶ 17.)

Spinningwebz provided technical support to RPE on the Reiss Profile as necessary, in accordance with guidance from IDS. (Hicks Decl. ¶¶ 4, 18.) In 2007, 2011, 2012, and 2015, Spinningwebz provided various technical support to RPE from its offices in New York. (*Id.* ¶¶ 20–24.) From October 2006 to November 2015, RPE sent a total of 47,950 answers to IDS' server in either New York or Arizona for scoring. (*Id.* ¶ 33.) In late November 2015, RPE allegedly "stopped sending test taker responses to IDS for scoring and apparently started scoring

5

test taker responses using its own scoring routine on its own server." (Maggi Reiss Decl. ¶ 42.) After that point, IDS does not know the "number of test takers actually tested." (*Id.* ¶ 43.)

In 2015, RPE's counsel, Holger Müller, notified IDS that "RPE issued sub-licenses for Germany, Belgium, The Netherlands, Luxembourg, and RPE's Institut fur das Reiss Profile in Management and Leistungsport in Germany." (*Id.* ¶ 57.) IDS asserts that it never "received any written request from RPE to grant any sublicenses" and did not consent to the "issuance of any such sublicenses." (Compl. ¶ 16.) In early February 2015, RPE allegedly informed IDS that it was developing and marketing a mobile application for "compliment cards" to be sold to test takers based on the results of the Reiss Profile. (*Id.* ¶ 29.) IDS states that it complained to RPE about the License violation, after which RPE "changed its position and asserted that this product is not derived from the Reiss Profile." (*Id.*)

In mid-June 2015, RPE wrote to IDS and voluntarily terminated the License "effective December 31, 2016." (*Id.* ¶ 31.) In the beginning of July, IDS sent RPE an invoice for €860,000 for past due royalties under the License. (*Id.* ¶ 32.) RPE later made two payments, leaving a balance due of €842,972.18, according to IDS. (Maggi Reiss Decl. ¶ 60.) On June 13, 2016, IDS sued RPE for copyright infringement, trademark infringement, breach of contract, and fraud and conversion. (Compl. ¶¶ 35–92.) RPE now moves to dismiss for lack of personal jurisdiction and failure to state a claim upon which relief may be granted, pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), respectively. (Def.'s Mot. at 1.) Alternatively, RPE argues for dismissal on the grounds of forum non conveniens. (*Id.* at 15.)

## II.

Federal Rule of Civil Procedure 12(b)(2) provides for dismissal when a court lacks personal jurisdiction over a defendant. In considering a motion to dismiss for lack of personal

6

jurisdiction, federal district courts have discretion to either decide the motion on the pleadings alone, permit discovery in aid of deciding the motion, or conduct an evidentiary hearing to resolve any apparent factual questions. *Theunissen*, 935 F.2d at 1458 (citing *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)). Here, neither party has requested a hearing and the Court is satisfied that the record is sufficiently developed to render a decision on the motion to dismiss.

Plaintiff bears the burden of establishing personal jurisdiction. *Estate of Thomson v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 360 (6th Cir. 2008). Where a Rule 12(b)(2) motion is decided solely on written submissions, the plaintiff's burden is "relatively slight"; the court must view all of the pleadings and affidavits in a light most favorable to the plaintiff, and to defeat dismissal, the plaintiff need only make a prima facie showing that personal jurisdiction exists. *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988); *see Shaker Constr. Grp. LLC, v. Schilling*, No. 1:08-cv-278, 2008 WL 4346777, at *1 (S.D. Ohio Sept. 18, 2008). Indeed, as the Sixth Circuit has explained, a court disposing of a 12(b)(2) motion "does not weigh the controverting assertions of the party seeking dismissal." *Theunissen*, 935 F.2d at 1459. The Sixth Circuit has adopted that approach "to prevent non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts." *Id.*

"Under Ohio law, personal jurisdiction over non-resident defendants is available only if (1) the long-arm statute confers jurisdiction and (2) jurisdiction is proper under the Federal Due Process Clause." *Conn v. Zakharov*, 667 F.3d 705, 712 (6th Cir. 2012). Moreover, "[u]nlike other jurisdictions, Ohio does not have a long-arm statute that reaches to the limits of the Due Process Clause, and the analysis of Ohio's long-arm statute is a particularized inquiry wholly

separate from the analysis of Federal Due Process law." *Id.* Thus, to find that it has personal jurisdiction over RPE, the Court must determine that RPE is amenable to suit under Ohio's long-arm statute and that the Court's jurisdictional exercise comports with the Due Process Clause of the Constitution. *Id.*

### III.

As detailed further below, the Court finds that IDS has failed to meet its burden of establishing that jurisdiction over Defendant RPE is proper under the Due Process Clause.[3] Specifically, the Court finds that RPE did not purposefully avail itself of the benefits of Ohio, and moreover, it would be unreasonable to exercise jurisdiction over RPE given the minimal connection between its actions and the forum state.

**A.    Waiver of Personal Jurisdiction**

As a threshold matter, IDS argues that RPE waived its right to dispute personal jurisdiction when it combined its motion to dismiss for lack of personal jurisdiction with motions to dismiss under Rule 12(b)(6) and forum non conveniens. (Pl.'s Resp. at 19.)

Federal Rule of Civil Procedure 12(g)(1) provides that "[a] motion under this rule may be joined with any other motion allowed by this rule," thus allowing a Rule 12(b)(2) and a Rule 12(b)(6) motion to be combined. Moreover, under similar circumstances to this case, the Sixth Circuit affirmed the dismissal of a claim for lack of personal jurisdiction even though the motion was filed alongside motions to dismiss under Rule 12(b)(6) and forum non conveniens. *See Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 675–78 (6th Cir. 2012); *see also Bledsoe v. Emery Worldwide Airlines*, 258 F. Supp. 2d 780, 782 (S.D. Ohio 2003), *aff'd sub nom.*, 635 F.3d 836 (6th Cir. 2011) (addressing motion to dismiss for lack of personal jurisdiction together with

---

[3] Accordingly, the Court finds it unnecessary to ultimately address whether Ohio's long-arm statute confers jurisdiction.

8

motion to dismiss for failure to state a claim). As Defendant argues, *Miller* demonstrates that a Rule 12(b)(2) motion, Rule 12(b)(6) motion, and forum non conveniens may be argued together in the same brief. Defendants also note that, in contrast to *Gerber v. Riordan*, 649 F.3d 514 (6th Cir. 2011), where the defendant substantially engaged in the underlying case and thus waived its personal jurisdiction defense, here merits discovery has been stayed pending the outcome of this motion and defendant has "unequivocally signaled that it will not defend the case on the merits." (Def.'s Reply at 12–13.) The Court finds that RPE has not waived its right to challenge personal jurisdiction.

**B.      Due Process**

As a general matter, "the Due Process Clause requires that the defendant have sufficient minimum contact[s] with the forum state so that finding personal jurisdiction does not offend traditional notions of fair play and substantial justice." *Conn*, 667 F.3d at 712. A court may have either general or specific jurisdiction over a defendant.[4] General jurisdiction is present "[w]hen a State exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 n.9 (1984). Specific jurisdiction is present "[w]hen a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *Id.* at 414 n.8.

**1.      General Jurisdiction**

A court may assert general jurisdiction over a "foreign-country" corporation when its

---

[4] On June 26, 2017, Defendant filed a Notice of Supplemental Authority in Further Support of [RPE's] Motion to Dismiss (ECF No. 23), calling to the Court's attention two recent Supreme Court decision regarding general and specific jurisdiction. *See BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549 (May 30, 2017) (affirming the principle that a corporate defendant is typically subject to general jurisdiction only in its place of incorporation and its principal place of business); *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773 (June 19, 2017) (reversing finding of specific jurisdiction based on lack of adequate connection to the forum). Plaintiff filed a response in opposition (ECF No. 24), to which Defendant filed a reply in support of its notice (ECF No. 25). Because the Court does not find either authority necessary to its decision, the parties' supplemental arguments will not be addressed further.

"affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State," even if the action did not arise from the defendant's state contacts. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe v. Washington*, 326 U.S. 310, 317 (1945)); *see also Bird v. Parsons*, 289 F.3d 865, 873 (6th Cir. 2002) (quoting *Third Nat'l Bank in Nashville v. WEDGE Group, Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989)). Typically, a corporation's "place of incorporation and the principal place of business" are the "bases" for general jurisdiction. *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014). In *Daimler*, the Supreme Court clarified that the question is not merely whether the defendant possesses 'continuous and systematic' contacts but rather whether those contacts "render [it] essentially at home." *Id.* at 761. Thus, for general jurisdiction to exist in the forum state, the corporation must be incorporated there, operate its principal place of business in the state, or have such "continuous and systematic" contacts that the corporation is "essentially at home." *Id.*

RPE was formed under Dutch law, operates in the Netherlands, and is owned by residents of Belgium, Germany, and the Netherlands. (Def.'s Mot. at 1.) As Ohio is neither RPE's state of incorporation or principal place of business, nor are its contacts with Ohio so "continuous and systematic" as to render it home, RPE is not subject to general jurisdiction in Ohio.

2. **Specific Jurisdiction**

Courts in the Sixth Circuit determine whether a court may exercise specific jurisdiction over a defendant using a three-part test set forth in *Southern Machine Company v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir. 1968):

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial

enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Id.*; *see also Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F.3d 790, 794 (6th Cir. 1996).

### a. **Purposeful Availment**

IDS has failed to establish that RPE purposefully availed itself of the benefits of acting in Ohio. IDS asserts that the "quality and quantity of the contacts between the parties" confer personal jurisdiction over RPE. (Pl.'s Resp. at 9.) IDS also alleges that RPE had "significant business contacts . . . with IDS in Ohio throughout the term of the License" and that RPE was "well-aware of the Ohio-centric name of this business relationship" when it signed the License. (*Id.* at 10.) It further states that "RPE intentionally acted to change the scoring system" and sent results to "IDS for scoring." (*Id.* at 15.) IDS also emphasizes the development of its test—including its re-norming and naming—which took place in Ohio, and RPE's regular purchase of tests uploaded by IDS in Ohio. (*Id.* at 10–11.) Finally, IDS places significant weight on the "numerous communications" between the parties over the years and the fact that Dr. and Mrs. Reiss oversaw test scoring, translation, and technical assistance from Ohio. (*Id.* at 10–13.)

The purposeful availment prong requires "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). The focus is on "the defendant's conduct and connection with the forum State" insofar as a defendant would "reasonably anticipate" the states in which that defendant may be "haled into court." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Defendants may then "structure their primary conduct" accordingly. *Id.* When nonresidents "purposefully direct" their activities toward residents, "[a] State generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985)

11

(quoting *McGee v. International Life Insurance Co.*, 355 U.S. 220, 223 (1957)).

This requirement protects defendants from being forced to litigate a case in a jurisdiction "solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Burger King*, 471 U.S. at 475 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984); *World-Wide Volkswagen*, 444 U.S. at 299; *Helicopteros*, 466 U.S. at 417). Where the defendant engages "in significant activities within a State or has created 'continuing obligations'" with the forum residents, the defendant "manifestly has availed" itself of the "privilege of conducting business" in that forum. *Id.* at 475–76 (internal citations omitted) (quoting *Keeton*, 465 U.S. at 781; *Travelers Health Ass'n v. Virginia ex rel. State Corp. Comm'n*, 339 U.S. 643, 648 (1950)).

Although RPE has no physical presence in Ohio and has never visited the state, IDS contends that jurisdiction "may not be avoided merely because the defendant did not *physically* enter the forum state." *Burger King Corp.*, 471 U.S. at 476. While true, simultaneously, "an individual's contract with an out-of-state party *alone*" cannot "automatically establish sufficient minimum contacts in the other party's home forum." *Id.* at 478. Thus, the fact that RPE entered into a contract with IDS does not alone confer jurisdiction over it. Instead, the Supreme Court has clarified that "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing . . . must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum." *Id.* at 479.

The existence of a contract and communications between the parties in the proposed forum state alone are insufficient to establish purposeful availment. *See Kerry Steel, Inc. v. Paragon Industries*, 106 F.3d 147, 151 (6th Cir. 1997) (citing *Burger King*, 471 U.S. at 473). In *Kerry Steel*, the Sixth Circuit held that an out-of-state defendant did not purposefully avail itself

of the benefits and protections of the forum state because, in part, no facts connected the subject matter or performance of the contract to the forum state. Furthermore, it held that any negative economic effect on the in-state plaintiff-seller did not create a determinative impact on the state economy, as "the locus of such a monetary injury is immaterial, as long as the obligation did not arise from a privilege the defendant exercised in the forum state." *Kerry Steel*, 106 F.3d at 151.

In support of purposeful availment, IDS relies on *KnowledgeAZ v. Jim Walter Resources, Inc.*, 452 F. Supp.2d 882, 896 (S.D. Ind. 2006), in which the Southern District Court of Indiana found that an Alabama defendant purposefully availed itself of Indiana by soliciting and executing a long-term license agreement with an Indiana company. Notwithstanding its nonbinding effect, *KnowledgeAZ* is distinguishable from this case. Unlike here, the defendant in *KnowledgeAZ* directly communicated with plaintiff on hundreds of occasions, allowed the plaintiff to remotely access its computer systems, sent two employees to the state to help with software updates, and engaged in unlawful side deals with plaintiff's employees who were residents of Indiana. *Id.* at 897. Here, there is no admissible evidence that RPE solicited the License from IDS; the bulk of RPE's alleged contacts with IDS during the License term were through Spinningwebz; and no one from RPE ever visited IDS or its employees in Ohio. Most importantly, the Court in KnowledgeAZ concluded that the alleged copyright infringement took place in the forum, whereas here RPE's alleged conduct occurred in Europe. *See id.* at 898.

In return, RPE cites to *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 720 (6th Cir. 2000) to argue that its contacts with Ohio were the same type of "'random,' 'fortuitous,' and 'attenuated' contacts that the purposeful availment requirement is meant to prevent from causing jurisdiction[.]" (Def.'s Mot. at 14 (quoting *Calphalon*, 228 F.3d at 723).) In that case, Ohio-based Calphalon engaged Rowlette to be its exclusive sales representative for five other states.

During the term of the arrangement, Rowlette corresponded with Calphalon in Ohio and made two visits to the state on business. Focusing on the "quality of the parties' relationship, rather than the duration of the relationship," the Sixth Circuit found that Rowlette's Ohio contacts were "purely 'fortuitous' and 'attenuated.'" *Id.* at 722. Ultimately, Rowlette contacted and visited Ohio "solely because Calphalon chose to be headquartered in Ohio, not because Rowlette sought to further its business" in Ohio. *Id.* at 723.

Here too, despite the License being in place for more than ten years, the Court's focus is on the quality of the parties' relationship rather than its duration. *Calphalon*, 228 F.3d at 722. Like *Calphalon*, the License here solely contemplated the exploitation of markets outside of Ohio. IDS also does not allege that RPE made any sales in Ohio beyond suggesting that since RPE "intentionally made its app available for sale in the Google and Apple app stores in the United States," both products were presumptively marketed in Ohio. (Pl.'s Resp. at 15.) IDS does not present specific evidence supporting this assertion; though neither does RPE directly respond to the argument. For the purposes of the Motion, the Court will view the assertion in the light most favorable to IDS.[5] Still, "simply making content available does not satisfy the threshold for due process." *Campinha-Bacote v. Wick*, No. 1:15-cv-277, 2015 WL 7354014, at *17 (S.D. Ohio Nov. 20, 2015). "[A] defendant's awareness that the stream of commerce may or will sweep the product into the forum State" by itself does not equate purposeful availment of the forum State. *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 112 (1987). Even if RPE did place its app on the market, IDS has failed to offer any evidence that RPE purposefully acted to take advantage of Ohio's market in particular. Also like the defendants in *Calphalon* and

---

[5] RPE generally asserts that it "never made a single sale within the United States, or otherwise marketed or delivered any product in or to the United States." (Def.'s Mot. at 15.) However, regarding whether it offered an app for sale in the United States, RPE simply states that IDS would be unable to "present admissible testimony concerning, for example, whether RPE . . . developed a mobile application." (*Id.* at 16–17; Def.'s Reply at 15.)

14

*Kerry Steel*, RPE communicated with IDS, including negotiating the agreement via email, solely because IDS happened to be located in Ohio. (*See* Pl.'s Resp. at 9.)

Next, IDS asserts that it suffered financial injury in Ohio as a result of RPE's alleged conduct such that RPE purposefully availed itself of the state. Economic harm to a plaintiff does not necessarily equal economic harm to the state. A plaintiff's "claimed injury to its purse might be said to have been suffered [in the plaintiff's home state]—but the *locus* of such a monetary injury is immaterial, as long as the obligation did not arise from 'a privilege the defendant exercised in [the forum state].'" *LAK Inc. v. Deer Creek Enter.*, 885 F.2d 1293, 1302–03 (6th Cir. 1989) (quoting *Denckla*, 357 U.S. at 252). Thus, IDS' alleged financial injury in Ohio is not dispositive, since RPE received the privilege to use the Reiss Profile in Europe, not Ohio.

IDS further points to its extensive work under the License in Ohio to support of jurisdiction over RPE. However, contrary to IDS' assertion that its own role is "instrumental in determining personal jurisdiction," (Pl.'s Resp. at 14, ECF No. 21), a plaintiff may not satisfy its burden by "demonstrating contacts between the plaintiff . . . and the forum State." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014). Rather, the "*defendant's* suit-related conduct must create a substantial connection with the forum State" in order for a court to "exercise jurisdiction consistent with due process" over that defendant. *Id.* at 1121 (emphasis added). In support of this proposition, RPE cites *Nationwide Mutual Insurance Co. v. Tryg International Insurance Co.*, 91 F.3d 790, 791 (6th Cir. 1996), in which the Sixth Circuit held that Tryg International, a European entity, did not purposefully avail itself of Ohio by participating in a reinsurance pool maintained by Nationwide Mutual Insurance in Ohio. *Id.* Tryg asserted that the agreement with Nationwide was negotiated in Europe, and that Tryg "never had an office, owned property, solicited business, or sent agents for the purpose of soliciting business in the state of Ohio." *Id.* at 791, 795. The

Court agreed that "many of the acts that Nationwide alleges give rise to jurisdiction over Tryg International, which were in fact actions undertaken by Nationwide . . . , are irrelevant for determining whether personal jurisdiction over Tryg exists." *Id.* at 795–96. Instead, according to the Sixth Circuit, it is the Defendant's own actions that must be the focus. *Id.* at 796.

Similarly here, IDS relies on the fact that the tests RPE used were uploaded, developed, studied, re-normed, and overseen by IDS in Ohio. In emphasizing the "active, integrated effort" between the parties, IDS asserts that "RPE could not have operated its business without IDS' ongoing support." (Pl.'s Resp. at 10.) However, these actions reflect the scope of IDS' contacts to Ohio, not RPE's. Thus, to the extent IDS relies on actions undertaken by itself in Ohio regarding the License, those actions are "irrelevant" for demonstrating jurisdiction over RPE. *See Nationwide*, 91 F.3d at 796.

IDS' reliance on RPE's interactions with Spinningwebz is likewise misplaced. According to IDS, the tests RPE conducted had to be "scored in the United States" by "sending a batch file of test taker answers to" Spinningwebz, whose services IDS oversaw and paid for from Ohio. (Pl.'s Resp. at 12.) However, Spinningwebz rendered all services to RPE from its office in New York, not Ohio. (Hicks Decl. ¶ 3, ECF No. 21-1.) RPE also sent its test answers to IDS' server in New York or Arizona, not Ohio. (*Id.* ¶ 16.) IDS scored the tests on the server and returned the results to RPE from the server, apparently without passing through Ohio. (Hicks Decl. ¶¶ 11–13.) The location of IDS' oversight of and payment to Spinningwebz reflects the duties undertaken by IDS pursuant to the contract and not necessarily RPE's interactions with the forum state. *Cf. CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1264–66 (6th Cir. 1996) (finding jurisdiction when the defendant reached out to subscribe to plaintiff's system, sent his software to the plaintiff's system in Ohio to be advertised for sale, and intended to create an ongoing

relationship with the plaintiff).

Overall, RPE's contacts with Ohio have largely been attenuated, fortuitous, and a consequence of IDS' unilateral activity. RPE does not have employees or offices in Ohio, conducts no business in Ohio, and was never physically present in Ohio. The parties initially discussed the License in Europe and negotiated the rest electronically. Although RPE sent the signed License agreement to IDS in Ohio and communicated with IDS in Ohio, these contacts occurred because IDS happened to be located in the state. The License gives RPE the authority to use IDS' product only in Europe; it also does not contain a directive to pay IDS in Ohio. During the term of the License, RPE sent its test answers to and communicated with Spinningwebz in New York or Arizona. The remainder of IDS' allegations concerns its own contacts with the state, not RPE's. Thus, RPE's alleged conduct under the License does not demonstrate that it purposefully availed itself of the state of Ohio.

### b. Reasonableness

Each criterion of the *Southern Machine* test "represents an independent requirement, and failure to meet any one of the three means that personal jurisdiction may not be invoked." *LAK Inc.*, 885 F.2d at 1303. Accordingly, IDS has failed to carry its burden demonstrating that RPE purposefully availed itself of the privileges of Ohio, and the Court need not fully examine the second and third criteria. Nevertheless, had IDS satisfied the first *Southern Machine* factor, it would still fail to meet the remaining two criteria. Briefly as to the second, the cause of action here arises from RPE's activities in Europe, not Ohio.

Regarding the third *Southern Machine* factor, it would not be reasonable for an Ohio court to exercise jurisdiction over RPE. Under this factor, a defendant's actions or its consequences "must have a substantial enough connection with the forum state to make the exercise of jurisdiction

17

over the defendant reasonable." *S. Mach. Co.*, 401 F.2d at 381. This final criterion "looks to the extent of the forum state's interest and whether exertion of jurisdiction over the particular defendant is fair." *First Nat'l Bank v. J.W. Brewer Tire Co.*, 680 F.2d 1123, 1126 (6th Cir. 1982). When evaluating this factor, courts typically consider "(1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the controversy." *Intera Corp. v. Henderson*, 428 F.3d 605, 618 (6th Cir. 2005). In cases involving a foreign defendant, "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi*, 480 U.S. at 114.

Like *Calphalon*'s nonresident defendant, RPE argues that the exercise of jurisdiction is not reasonable because it does not have a substantial enough relationship to Ohio. (Def.'s Mot. at 14; *see Calphalon*, 228 F.3d at 724.) RPE asserts that it was "not licensed to conduct business in the United States; has no employees in the United States; has no office, registered agent, or any property in the United States," and the License primarily addressed RPE's rights in Europe, not Ohio. (Def.'s Mot. at 14–15.) Additionally, RPE's officers and documents are located in Europe. As a foreign non-resident defendant, RPE's "unique burdens" are entitled "significant weight in assessing the reasonableness" of exercising jurisdiction over it. *Asahi*, 480 U.S. at 114.

IDS maintains that "when the defendant's actions infringe upon a copyright owner's rights, the owner's suit within its forum state is predictable and certain," and "it is fundamentally fair to allow a plaintiff to vindicate its rights where it is located." (Pl.'s Resp. at 16.) However, merely having an in-state plaintiff is "hardly enough" to demonstrate reasonable jurisdiction. *LAK, Inc.*, 885 F.2d at 1304. IDS' "interest in obtaining relief" in Ohio is only one factor to

consider when weighing whether jurisdiction is reasonable. *Asahi*, 480 U.S. at 113. Moreover, Ohio's interest in the resolution of the controversy here is slight because this case involves an Ohio company's dispute with a European company over a License for use in Europe. *See LAK*, 885 F.2d at 1304–05 (noting that the court was at "a loss to see why Michigan should be thought to have a vested interest in the outcome of a Michigan company's dispute with a foreign owner over a contract for the sale of a tract of land in Florida"). In sum, RPE does not possess enough connections with Ohio for the exercise of jurisdiction over it to be reasonable.

### C. Ohio's Long Arm Statute

Because the Court has concluded that IDS failed to prove its prima facie burden that RPE conforms to the requirements of the Due Process, the Court need not analyze whether jurisdiction would be proper under Ohio's long-arm statute. *See Conn v. Zakharov*, 667 F.3d 705, 712 (6th Cir. 2012) ("[I]f jurisdiction is not proper under the Due Process Clause it is unnecessary to analyze jurisdiction under the state long-arm statute, and vice-versa.").

### IV.

For the reasons stated above, RPE's Motion to Dismiss for lack of personal jurisdiction (ECF No. 18) is **GRANTED** and this case is **DISMISSED**. Accordingly, the Court declines to address the remaining bases for dismissal raised in Defendant's Motion.

**IT IS SO ORDERED.**

9-18-2017
**DATE**

**EDMUND A. SARGUS, JR.**
**CHIEF UNITED STATES DISTRICT JUDGE**